291 N.J. Super. 417 (1996)
677 A.2d 788
PETER S. WATSON, INDIVIDUALLY AND AS GENERAL ADMINISTRATOR AND ADMINISTRATOR AD PROSEQUENDUM OF THE ESTATE OF KATHLEEN S. WATSON, PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
AGWAY INSURANCE COMPANY AND FIRST TRENTON INDEMNITY COMPANY, DEFENDANTS/APPELLANT/RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 19, 1996.
Decided June 20, 1996.
*418 Before Judges KEEFE, WEFING and A.A. RODRIGUEZ.[1]
Sharon K. Galpern argued the cause for appellant Agway Insurance Company (Stanley P. Stahl, attorney).
William J. Cook argued the cause for respondent/cross-appellant Peter S. Watson (Brown & Connery, attorneys).
*419 Lawrence D. Lally argued the cause for respondent First Trenton Indemnity Company (Montano, Summers, Mullen, Manuel, Owens & Gregorio, attorneys).
The opinion of the court was delivered by KEEFE, J.A.D.
In this declaratory judgment action, defendant Agway Insurance Co. (Agway), appeals from the entry of summary judgment in favor of plaintiff Peter S. Watson holding that there was underinsured motorist (UIM) coverage available under Agway's business automobile and excess policies for the benefit of plaintiff's decedent Kathleen Watson. We affirm.
On July 5, 1994, plaintiff Peter Watson's wife, Kathleen, was fatally injured in an automobile accident. The accident was caused when a vehicle driven by Francis Montgomery failed to stop for a stop sign and flashing red light and collided with Kathleen's vehicle. Colonial Penn Insurance Company was the liability insurer of the Montgomery automobile. It tendered its single limit liability coverage of $100,000 in settlement of the case against its insured.
At the time of the accident, Kathleen was driving a leased vehicle which was a temporary substitute for her personal automobile that was being repaired. Her personal automobile was insured by defendant First Trenton Indemnity Co. (First Trenton). Defendant Agway was the insurer under a business automobile policy and an excess insurance policy in which "Peter Watson, David Watson T/A Watson Farms" were the named insureds. Plaintiff notified First Trenton and Agway of his intention to make UIM claims against them, and his intentions to settle with Colonial Penn. Neither Agway nor First Trenton objected to plaintiff's acceptance of the settlement. Agway denied UIM coverage for damages resulting from Kathleen's death under its auto and excess policies.
*420 Plaintiff instituted this declaratory judgment action against Agway and First Trenton, seeking a determination that both First Trenton and Agway provided $500,000 in primary UIM coverage, and that Agway provided an additional $1,000,000 in excess UIM coverage. Plaintiff moved for summary judgment seeking the relief sought in his complaint as well as counsel fees. First Trenton cross-moved, essentially taking the same position as plaintiff in respect of the Agway policies, but also seeking a declaration that First Trenton's policy was excess to Agway's. Agway cross-moved seeking a determination that neither of its policies provided UIM coverage for Kathleen's accident.
Agway argued that there was no coverage because the named insured in the Agway policies is a partnership, and, as such, the wife of an individual partner cannot receive third party UIM benefits under the terms of either policy. The Law Division judge, Lee B. Laskin, rejected that argument. He ruled that the Agway policies provided UIM coverage for Kathleen; that the Agway and First Trenton policies were co-primary and afforded $200,000 in UIM coverage under each policy; and that Agway's excess policy provided an additional $1,000,000 of coverage. Plaintiff's application for attorney fees was denied.
Agway appeals from that decision and plaintiff cross-appeals from the denial of counsel fees. First Trenton joins in plaintiff's contention that the Agway policies afford UIM coverage in these circumstances. Neither insurer challenges the trial court's determination of co-primary coverage in the event we hold that there is coverage under the Agway policies. Agway concedes on appeal that if we find UIM coverage under the auto policy, there is also coverage under the excess policy, inasmuch as the arguments made under the auto policy are the same as those advanced under the excess policy. Therefore, we shall focus our analysis on the terms of the auto policy.
The declarations page of the Agway policy describes the coverage as "COMMERCIAL AUTO COVERAGE PART/BUSINESS AUTO DECLARATIONS." The "Named Insured" is identified *421 as "Peter Watson, David Watson T/A Watson Farms." Underneath the designation of the named insured, the policy has the following words contained on one line: "Form of Business: [] Individual [x] Partnership [] Corporation []Other ____." As indicated, the box next to the word "Partnership" was marked with an "x." The policy provided for liability coverage of $500,000 with uninsured (UM) and UIM coverage in the same amount.
The UIM endorsement affords coverage to an "insured" who is entitled to recover compensatory damages from the owner or driver of an "underinsured motor vehicle." It is conceded for the purpose of this litigation that the Montgomery vehicle was underinsured. An "insured" is defined in the endorsement as:
1. You.
2. If you are an individual, any "family member."
3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto." The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.
4. Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured."
A "family member" is defined in the endorsement as "a person related to you by blood, marriage, or adoption who is a resident of your household, including a ward or foster child." The word "you" is not defined in the endorsement, but it is defined elsewhere in the policy this way:
Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.
Plaintiff reasons that "you" in paragraph one of the UIM endorsement refers to Peter in the context of the facts of this case because he is a named insured on the declarations page of the policy. Further, Peter is an "individual." Therefore, inasmuch as Kathleen is Peter's "family member," she is an insured under the terms of paragraph two of the endorsement.
Agway, however, contends in its brief that while
Peter Watson and David Watson standing alone may be individuals[,] ... when taken together as designated on the policy, they are a partnership unit. Peter Watson and David Watson are not insured as "individuals" but instead, are insured as a "partnership" under the explicit terms of the Agway policies.
*422 At oral argument, great emphasis was placed on the fact that an "x" was typed in the box next to "partnership" as the form of business being engaged in by the named insureds. However, Agway has failed to point to anything in the policy which makes that designation a significant factor in determining coverage. As we read the policy, coverage is determined by how the "named insured" is described in the policy, not what business form the named insured has elected to utilize. We reiterate, the "named insured" in the Agway policy is designated as "Peter Watson, David Watson T/A Watson Farms." The named insured is not, for example, "Watson Farms, a partnership."
Despite Agway's contention that Peter and David Watson are not insured as "individuals," its conduct and statements reveal otherwise. Several endorsements to the auto policy, effective as of June 20, 1994, the original issue date of the policy, refer to the "named insured" as "Peter Watson, David Watson." Agway's counsel's letter of November 15, 1994, recognized that "Peter Watson is a named insured under both Agway policies." Agway, through a representative at depositions, agreed with its counsel's statement in that letter. He also acknowledged that the word "you" as used in the policy in general, and specifically as used in the UIM endorsement, referred to Peter Watson as a named insured. Further, the representative acknowledged that Peter Watson would be covered under the UIM endorsement as the "you" referred to in paragraph one of the endorsement; that he was the same "you" referred to again in paragraph two, and that Kathleen was a "family member." Finally, he admitted that Peter Watson would be entitled to UIM coverage even if he were operating a non-covered automobile under the policy.
Notwithstanding these admissions, Agway maintains that there is no coverage for Peter Watson as an "individual." Agway's argument comes to this: Peter Watson, the natural person, loses his identity as an individual because he is a partner in Watson Farms. Reduced to its essence, the argument is untenable because it is contrary to the reasonable expectations of an average *423 person who reads the policy and is conversant with the English language. Doto v. Russo, 140 N.J. 544, 556, 659 A.2d 1371 (1995). Nowhere in the policy does it state that where a natural person is listed as a named insured, the natural person qualifies as "you" for UIM coverage for himself or herself, but is not an "individual" in order to qualify a family member for the same coverage. Indeed, the word "individual" is not defined in the endorsement or elsewhere. Therefore, it must be given its common sense meaning in the context in which it is used: "a single human being as contrasted with a social group or institution." Webster's Third New International Dictionary, 1152 (1966).
The best that can be said for the policy language in light of Agway's argument is that it is ambiguous, which is of no solace to Agway. If the controlling language of an insurance policy supports two interpretations, one favorable to the insurer and the other favorable to the insured, courts are obliged to adopt the interpretation supporting coverage. Salem v. Oliver, 248 N.J. Super. 265, 271, 590 A.2d 1194 (App.Div. 1991), aff'd o.b., 128 N.J. 1, 4, 607 A.2d 138 (1992). "Recognizing the position of laymen with respect to insurance policies prepared and marketed by the insurer; our courts have endorsed the principle of giving effect to the `reasonable expectations' of the insured for the purposes of rendering a `fair interpretation of the boundaries of insurance coverage.'" DiOrio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 269, 398 A.2d 1274 (1979). This is especially so where, as here, the wording of the policy is at best ambiguous from the standpoint of the insured. State, Dep't of Envtl. Protection v. Signo Trading Int'l., 130 N.J. 51, 62, 612 A.2d 932 (1992).
Giambri v. Geico, 170 N.J. Super. 140, 405 A.2d 872 (Law Div. 1979), aff'd o.b., 174 N.J. Super. 162, 415 A.2d 1202 (App.Div. 1980), cited by Agway to support its argument that the policy provides coverage only for the partnership as an entity, is factually inapposite. In that case, a family-owned corporation was the named insured on a policy covering four vehicles. No individuals were listed on the policy as named insureds. Id. at 141, 405 A.2d *424 872. Therefore, we have no quarrel with the result arrived at there which denied PIP benefits to a corporate employee who was also a member of the owners' family.
In American Bankers Ins. Co. of Florida v. Stack, 208 N.J. Super. 75, 79, 504 A.2d 1219 (Law Div. 1984), cited by plaintiff in his brief, an unincorporated trade name business was held to be functionally interchangeable with its individual principal. In that case the named insured was an unincorporated trade name sole proprietorship owned by defendant's father. Id. at 77, 504 A.2d 1219; see also, Craig & Pommeroy, New Jersey Auto Insurance Law, § 21:2-1. After an accident with an uninsured motorist, plaintiff disclaimed UM coverage for the defendant, a passenger in someone else's truck, on the ground that the policy covered only the business and not the family members. Ibid. The court relied upon the decision of a federal court in O'Hanlon v. Hartford Acc. & Indemn. Co., 639 F.2d 1019, 1025 (3d Cir.1981), which held that a trade name was nothing more than the alter ego of the individual. American Bankers, supra, 208 N.J. Super. at 79, 504 A.2d 1219.
While American Bankers, supra, shows that New Jersey courts are willing to find an unincorporated business to be interchangeable with the sole proprietor for insurance coverage purposes, it is not helpful in deciding whether this court should find that a partnership is the functional equivalent of its partners for insurance coverage purposes. However, other jurisdictions that have dealt with this issue have held that where the individuals along with the partnership are listed as the named insured, the individuals are covered in that capacity.
In Nationwide Mutual Ins. Co. v. United States Fidelity and Guaranty Co., 529 F. Supp. 194 (E.D.Pa. 1981), the court held that the provision of an insurance policy listing the named insured as two individuals trading as their last name was ambiguous, and that reasonable individuals could differ as to whether the provision designated the partnership, the individuals, or both as the named insured. Id. at 198. In that case, the insurance company, USF & *425 G, had issued a comprehensive general automobile liability policy covering two vehicles owned or leased by Treegoob Appliances, Inc.. Id. at 195. An endorsement to the policy identified the named insured of that policy as follows:
It is hereby agreed and understood that the Named Insured is:
Harold and Warren Treegoob T/A Treegoob's;
Treegoob's Appliances, Inc.;
Warren Mark Corporation;
Valient Finance Company, Inc.;
Valient Consumer Discount Company, A.T.I.M.A.
[Ibid.]
When Warren Treegoob's minor son was struck and severely injured by an automobile while he was crossing the street, the insurer denied coverage for the son's injuries. It claimed that the partnership, and not Warren Treegoob individually, was the named insured. Ibid. The court held that the policy provision was ambiguous and resolved the ambiguity against the insurer. It found that the provision listing "Harold and Warren Treegoob T/A Treegoob's" designated Warren Treegoob, the individual, as a named insured under the policy. Id. at 198. Therefore, Warren's son was entitled to personal injury protection benefits under the Pennsylvania No Fault Act. Ibid.
Even though the court in Nationwide Mutual, supra, based its determination on the ambiguity of the policy provisions, it alternatively relied upon Pennsylvania's adherence to the aggregate theory of partnership. Id. at 200. The court predicted that under the aggregate theory of partnership, the Pennsylvania Supreme Court would hold that the designation of the named insured as "Harold and Warren Treegoob T/A Treegoob's" insured Warren Treegoob in his individual capacity. Ibid. The court cited language from a Pennsylvania Supreme Court decision issued after the adoption of the Uniform Partnership Act regarding the basic law in the Commonwealth on partnerships:
We deem it to be the law of Pennsylvania and the approved opinion in most jurisdictions that a partnership is not recognized as a legal entity having such a *426 domicile or residence separate and distinct from that of the individuals who compose it. It is rather a relation or status between two or more persons who unite their labor or property to carry on a business for profit. This is subject to an apparent exception, for while a partnership as such is not a person, it, as a matter of fact, is treated by a legal fiction as a quasi person or an entity for such purposes as keeping of partnership accounts and marshalling assets.
[In Morrison's Estate, 343 Pa. 157, 22 A.2d 729, 732 (1941).]
Likewise, in Ohio Casualty Insurance Co. v. Fike, 304 So.2d 136 (Fla. Dist. Ct. App. 1974), the Florida District Court of Appeal held that, although in the commercial sense a partnership is looked upon as a legal entity, Florida follows the common law view "that a partnership is not a legal entity apart from the members composing it." Fike, supra, 304 So.2d at 137. The court held that where a policy of insurance refers to the partnership entity as the named insured and then proceeds to list the names of the individual partners in describing the named insured, the policy must be read to cover "the partners as individuals as well as partners as an entity" unless a contrary intention clearly appears. Ibid. Consequently in that case, the court found that the policy listing the named insured as "Russell C. Fike, Jr. and Robert D. Fike d/b/a Orange State Painting Co." provided coverage to Russell's daughter under the no-fault provisions of the policy when she was struck by an automobile while walking. Id. at 136. The court also noted that it could have made the same determination on the basis of ambiguity. Id. at 137, n. 2.
Finally, in Grotelueschen v. American Family Mutual Ins. Co., 171 Wis.2d 437, 492 N.W.2d 131 (1992), the Wisconsin Supreme Court held that an insurance policy's comprehensive general liability provision which insured a partnership and also listed individual partners by name, covered the insured as an individual with respect to injuries sustained by his granddaughter while he was mowing a lot. Id. 492 N.W.2d at 135, see also McDonald v. Aetna Casualty & Surety Co., 47 Wis.2d 235, 177 N.W.2d 101 (1970). The Grotelueschen court based its decision upon Wisconsin's view of the partnership as an aggregate as opposed to an entity. Id. 492 N.W.2d at 134-135. The court explained that:

*427 Wisconsin law views a partnership as an aggregate for some purposes and as an entity for others. [citations omitted]. For example, a partnership conveys and holds title to property as a separate entity. [citations omitted]. However, the definition of a partnership  "an association of two or more persons to carry on as co-owners [of] a business for profit"  views the partnership as an aggregate. Thus, whether Wisconsin views a partnership as a separate legal entity or an aggregate of individual partners depends upon the issue.
[Id. at 134.]
The court ultimately held that, where the individuals as well as the partnership were listed as named insureds, the aggregate theory applied, and the partners were covered in an individual capacity. Ibid.
In New Jersey, courts have approached partnership law in a manner similar to the Wisconsin courts. By statute, New Jersey defines a partnership as, "an association of two or more persons to carry on as co-owners of a business for profit." N.J.S.A. 42:1-6. Thus, the statute defines partnership as an aggregate of persons. However, like Wisconsin, New Jersey views a partnership as a legal entity for some purposes and as an aggregate for others. For the purposes of facilitating transfers of property, marshalling assets, and protecting the business operation against the immediate impact of personal involvements of the partners, the partnership is regarded as a legal entity. Mazzuchelli v. Silberberg, 29 N.J. 15, 21, 148 A.2d 8 (1959); see also Eule v. Eule Motor Sales, 34 N.J. 537, 545, 170 A.2d 241 (1961) (partnership regarded as entity where wife of partner sues partnership for injuries negligently inflicted by husband while driving automobile owned by partnership); Felice v. Felice, 34 N.J. Super. 388, 391-92, 112 A.2d 581 (App.Div. 1955) (with respect to worker's compensation, partnership is regarded as an entity for the purposes of determining the liability to an employee-wife of a partner). For tax purposes, a partnership is not a legal entity but merely, an aggregation of individuals who have pooled skills, services, or capital to make an income. Hoblitzell v. Howard, 30 N.J. Super. 159, 103 A.2d 625 (Ch.Div. 1954), aff'd, 18 N.J. 104, 112 A.2d 715 (1955).
*428 In this case, we employ the aggregate theory of partnership. As in the previously cited cases that have considered the issue, the individual partners were listed along with the partnership as the named insured. To do so fulfills the reasonable expectations of the insureds in the context of the language used in the policy and is consistent with established principles of partnership law.
Affirmed.
NOTES
[1] Judge Rodriguez did not participate in oral argument but joins in this opinion with the consent of the parties.