690 A.2d 1104

UNIVERSAL UNDERWRITERS INSURANCE COMPANY, RECRE-ATIONAL PRODUCTS INSURANCE DIVISION, PLAINTIFF-APPELLANT, v. NEW JERSEY MANUFACTURERS INSUR-ANCE COMPANY, DEFENDANT-RESPONDENT, AND DAVID MARSHALL, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 3, 1997—Decided April 3, 1997.

Landau, J.A.D., filed opinion concurring in result.

———————

Before Judges PETRELLA, LANDAU and KIMMELMAN.

*Margolis Edelstein,* attorneys for appellant Universal Underwriters Insurance Company in A–4514–95 (*Robert M. Kaplan,* on the brief).

*Randolph H. Wolf,* attorney for appellant David Marshall in A–4796–95 (*Mr. Wolf* and *Robert W. Ruggieri,* on the brief).

*Mortenson and Pomeroy,* attorneys for respondent in A–4514–95 and A–4796–95 (*Daniel J. Pomeroy* and *Karen E. Heller,* on the brief).

The opinion of the court was delivered by

PETRELLA, P.J.A.D.

Plaintiff Universal Underwriters Insurance Company, Recreational Products Insurance Division (Universal) and defendant

David Marshall (Marshall) filed separate appeals [1] from the grant of summary judgment to defendant New Jersey Manufacturers Insurance Company (NJM). The motion judge held that NJM was not required to participate under its automobile insurance policy in underinsured motorist (UIM) coverage arbitration for an injury to Marshall incurred during the operation of his motorcycle. The appeals are consolidated for the purpose of this opinion.

Universal sought declaratory judgment against NJM and Marshall, claiming he was insured by both companies and requesting that NJM participate on a *pro rata* basis in any potential award to Marshall under UIM coverage. On cross-motions for summary judgment, the judge concluded that "from the totality of all of the circumstances" there was no coverage under Marshall's personal automobile policy issued by NJM. On review of both Universal's and NJM's policies and in light of the appropriate legal principles, we disagree and reverse.

On August 3, 1994, Marshall was injured in an motor vehicle accident on West Canal Road in Franklin Township when Bartel Scheckinger crossed the road's center line and hit Marshall, who was riding his motorcycle. Scheckinger's automobile insurance carrier, Maryland Casualty Insurance Company (MCIC), settled with Marshall for its policy limit of $15,000. Marshall asserts that his medical expenses exceed that amount.

Marshall had a "Motorcycle Policy" with Universal insuring his 1993 Harley Davidson motorcycle, and providing liability and UIM coverage of $100,000 each and $300,000 per accident.[2] Additionally, Marshall owned a 1987 Jeep and 1992 Plymouth automobile insured by NJM with a UIM limit of $500,000. The NJM policy expressly excludes any liability coverage "for the ownership, main-

---

[1] Universal appeals in Docket No. A–4514–95T2 and Marshall appeals in Docket No. A–4796–95T5.

[2] Universal's UIM coverage also provided $25,000 coverage for property damage, subject to a $250 deductible.

tenance or use of: [a]ny motorized vehicle having fewer than four wheels."

I.

Our function in construing the provisions of an insurance contract is to give effect to the parties' intent as evidenced by the terms used by them. *Sinopoli v. North River Ins.*, 244 *N.J.Super.* 245, 250–251, 581 *A.*2d 1368 (App.Div.1990), *certif. denied*, 127 *N.J.* 325, 604 *A.*2d 600 (1991); *see also Jacobs v. Great Pacific Century Corp.*, 104 *N.J.* 580, 582, 518 *A.*2d 223 (1986); *Atlantic Northern Airlines, Inc. v. Schwimmer*, 12 *N.J.* 293, 301, 96 *A.*2d 652 (1953). An insurance policy that is clear and unambiguous should be enforced as written. *Royal Ins. Co. v. Rutgers Cas. Ins. Co.*, 271 *N.J.Super.* 409, 416, 638 *A.*2d 924 (App.Div.1994).

Any ambiguity found in the policy should be construed against the insurer and "exclusionary clauses should be strictly construed." *Sinopoli v. North River Ins., supra*, 244 *N.J.Super.* at 250, 581 *A.*2d 1368; *New York State Higher Educ. Services Corp. v. Lucianna*, 284 *N.J.Super.* 603, 608, 666 *A.*2d 173 (App. Div.1995). "If the controlling language of an insurance policy supports two interpretations, one favorable to the insurer and the other favorable to the insured, courts are obligated to adopt the interpretation supporting coverage." *Watson v. Agway Ins. Co.*, 291 *N.J.Super.* 417, 423, 677 *A.*2d 788 (App.Div.1996) (citing *Salem v. Oliver*, 248 *N.J.Super.* 265, 271, 590 *A.*2d 1194 (App.Div.1991), *aff'd o.b.*, 128 *N.J.* 1, 4, 607 *A.*2d 138 (1992)).

Marshall is the named insured on the Declaration page of NJM's automobile policy. That page indicates that the policy provides him $500,000 in UIM coverage. It is undisputed that Marshall was injured in an automobile accident with an underinsured motorist.[3] NJM's underinsured motorist provision defines

---

[3] As noted, Scheckinger, the culpable party, paid his policy limits of $15,000 to Marshall.

an underinsured motor vehicle as a "land motor vehicle or trailer of any type to which a liability ... policy applies at the time of the accident but its limit is less than the limit of liability for this coverage...." UIM coverage extends to:

compensatory damages which an **Insured** is legally entitled to recover from the owner or operator of an ... **underinsured motor vehicle** where such coverage is indicated as applicable in the Declarations because of:

1. **Bodily Injury** sustained by an **Insured** and caused by an accident....

    \*       \*       \*       \*       \*       \*       \*       \*

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the ... **underinsured motor vehicle.** We will pay damages under this coverage caused by an accident with an **underinsured motor vehicle** only after the limits of liability under any applicable liability bonds or policies have been exhausted....

NJM's policy by its terms provides UIM coverage for Marshall because the bodily injuries he sustained were caused by an accident with an underinsured motorist.[4]

What is not so clear, is the effect of Marshall's purchase of UIM insurance with another carrier, Universal. The UIM provisions of Part C of Universal's policy, as amended by endorsement,[5] state:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle where such coverage is indicated as applicable in the Schedule or Declarations because of:

1. Bodily Injury sustained by a covered person and caused by an accident; and

2. Property damage caused by an accident except under paragraph 2 of the definition of uninsured motor vehicle.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle or underinsured motor vehicle. We will pay damages under this coverage caused by an accident

---

[4] A motor vehicle is by statute underinsured when the "sum of the limits of liability ... available to a person *against whom recovery is sought* ... is, at the time of the accident, less than the applicable limits for underinsured motorist coverage afforded under the motor vehicle insurance policy *held by the person seeking that recovery." N.J.S.A.* 17:28–1.1e (emphasis added).

[5] Language in the Universal policy, which was replaced by the endorsement, had indicated that the policy's UIM provisions were extended only to an accident involving the insured's motorcycle.

with an underinsured motor vehicle only after the limits of liability under any applicable liability bonds or policies have been exhausted by payment of judgments or settlements.

■ To determine whether a policy provides primary, co-primary or excess coverage, the court must look to each policy's "Other Insurance" provisions. *Royal Ins. Co. v. Rutgers Cas. Ins. Co., supra,* 271 *N.J.Super.* at 415, 638 *A.*2d 924; *American Reliance Ins. Co. v. American Cas. Co.,* 294 *N.J.Super.* 238, 240, 683 *A.*2d 205 (App.Div.1996). In *Royal Ins.,* the plaintiff was injured in an automobile accident with an underinsured motorist in a vehicle owned and insured with Royal Insurance Company by her employer, and providing UIM coverage of $500,000. Plaintiff was permitted to drive the automobile as part of her work compensation, but was required to contribute $25 per month toward insurance. Additionally, plaintiff and her husband owned two other vehicles insured by Rutgers Casualty with $300,000 in UIM coverage. The Rutgers' "Other Insurance" provision specifically provided:

> any insurance we provide with respect to a *vehicle you do not own,* or a vehicle owned by you or your family member which is not insured for this coverage under this policy, *shall be excess* over any other collectible insurance.
>
> [*Royal Ins. Co. v. Rutgers Cas. Ins. Co., supra,* 271 *N.J.Super.* at 415, 638 *A.*2d 924].

We held that because plaintiff was injured in a car she did not own, under the express terms of the Rutgers policy, it only provided excess insurance to the Royal policy. *Id.* at 417, 638 *A.*2d 924.

■ Universal concedes UIM coverage under its policy, and that Marshall is underinsured. It contends, however, that NJM's policy provides concurrent coverage and should bear a *pro rata* share of the liability. Universal's argument has merit. NJM's "Other Insurance" provision provides:

> If there is other applicable similar insurance under more than one policy or provision of coverage:
>
> 1. Any recovery for damages for property damage or bodily Injury sustained by an Insured may equal but not exceed the higher of the applicable limit for any one vehicle under this insurance or any other insurance.

2. Any insurance we provide with respect to a *vehicle you do not own* shall be excess over any other collectible insurance.

3. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. [emphasis added].

NJM's policy is distinguishable from the Rutgers policy because NJM's policy does not contain the exclusionary language "a vehicle owned by you . . . *which is not insured for this coverage under this policy, shall be excess* over any other collectible insurance." *Royal Ins. Co. v. Rutgers Cas. Ins. Co., supra,* 271 *N.J.Super.* at 415, 638 *A.*2d 924 (emphasis added). NJM's policy provides excess insurance only for vehicles not owned by the insured. Because Marshall owned his motorcycle, paragraph three of NJM's "Other Insurance" provision applies and NJM must share in the loss on a *pro rata* basis.

In summary, since NJM's policy provides UIM coverage for injuries sustained by an insured in an accident with an underinsured motorist, regardless of whether the vehicle the insured is occupying is insured under its policy, and NJM by its policy terms agrees to share in the loss if other insurance is applicable, NJM must participate in the loss.

This result is consistent with our decision in *Watson v. Agway Ins. Co., supra,* 291 *N.J.Super.* 417, 677 *A.*2d 788, a declaratory judgment case where plaintiff's wife was fatally injured in an automobile accident. Plaintiff settled with the tort-feasor for its policy limits of $100,000. *Id.* at 419, 677 *A.*2d 788. Plaintiff's wife had her own UIM insurance and he had a business automobile policy with his partnership as the named insured. Both policies had a UIM limit of $500,000, but the partnership policy had excess UIM coverage with a $1,000,000 limit. The trial court decided that both policies were available for UIM coverage and each afforded $200,000 in coverage,[6] with the partnership's policy providing $1,000,000 in excess insurance. In affirming, we reasoned

---

[6] Decedent's husband collected $100,000 from the tort-feasor's insurer, resulting in decedent being underinsured in the amount of $400,000. Both insurers were responsible for an equal share of that amount.

that the partnership policy insured not only the named insured (the partnership), but also the individual partners. Thus, under that policy's express language, plaintiff's wife was covered as a member of his family and both carriers were required to share in the loss. *Id.* at 421, 677 *A.*2d 788.

## II.

NJM makes the technical argument that because its policy excludes from any liability coverage an accident arising from the use of a motorcycle, the insurance statutes bar recovery under the underinsured motorist section of its policy. For this proposition, NJM relies on *N.J.S.A.* 17:28–1.1b [7] which provides that a policy's UIM coverage cannot exceed its liability coverage. NJM argues that the exclusion of motorcycles contained in the liability section of its policy produces a liability limit of zero ($0), and, therefore, it concludes that recovery under its UIM coverage should be capped at $0 by statute.

To support this argument, NJM relies upon the step-down analysis discussed in *Aubrey v. Harleysville Ins. Cos., supra,* 140 *N.J.* 397, 658 *A.*2d 1246. Plaintiff in *Aubrey* was using a car on loan from an automobile dealer, insured by the dealer with a UIM limit of $1,000,000, when she was involved in an accident. At the time, plaintiff had her own automobile insurance with a UIM limit of $15,000. Plaintiff recovered $40,000 from the tort-feasor in the accident, and since this amount exceeded her own policy limits, she could not recover UIM benefits under it. Consequently, she attempted to recover as an insured under the car dealer's insurance policy. The Supreme Court concluded that plaintiff's personal selection of UIM insurance with a $15,000 limit capped her recovery. *Id.* at 403, 658 *A.*2d 1246. To allow her recovery under

---

[7] "Uninsured and underinsured motorist coverage shall be provided as an option by an insurer to the named insured up to at least the following limits ... [that] *shall not exceed the insured's motor vehicle liability policy limits* for bodily injury and property damage, respectively." *N.J.S.A.* 17:28–1.1b (emphasis added).

the dealership's $1,000,000 UIM insurance "would distort the meaning of an insured's 'reasonable expectations.'" *Id.* at 404, 658 *A.*2d 1246.

The Court also concluded that Aubrey was not underinsured under the terms of the auto dealer's garage policy issued by The Harleysville Insurance Companies (Harleysville) with UIM coverage limit of $1,000,000. The policy's liability section excluded the auto dealership's customers from coverage. However, the policy contained a "step-down" clause which provided customers with liability coverage up to the statutory minimum if they held less insurance. The policy's UIM endorsement did not contain the step-down clause but covered any person "occupying a covered auto." *Id.* at 401, 658 *A.*2d 1246. The Court concluded that it had to determine "whether Aubrey's right to recover, if any, would extend to the $1,000,000 limit of the UIM clause or would be limited, because of the parity provision and the step-down clause, to $15,000." *Ibid.*

This court had concluded that the step-down clause did not apply because it was not contained in the UIM section. *Aubrey v. Harleysville Ins. Cos.,* 274 *N.J.Super.* 237, 241, 243, 643 *A.*2d 1043 (App.Div.1994). We reasoned that the step-down clause could not be applied against Aubrey because she had the statutory minimum insurance. *Id.* at 241, 643 *A.*2d 1043.

In deciding this issue, the Supreme Court disagreed and stated:

To determine whether Aubrey is "underinsured" under the Harleysville UIM endorsement, we turn to the Harleysville step-down clause, which defines an insured who has liability insurance, but only for the "amount by which the compulsory or financial-responsibility law limits exceed the limit of [the customer's liability] insurance." Thus, the step-down clause limits liability coverage for a customer to the statutory minimum, $15,000. *Under the parity provision of N.J.S.A. 17:28-1.1b, Aubrey's right to recover underinsured benefits would be limited to that amount.* Aubrey's own policy, moreover, meets the statutory minimum by providing $15,000 of liability coverage. Consequently, the $15,000 statutory minimum does not "exceed" Aubrey's liability limits. Aubrey, therefore, is not covered under the liability section of the Harleysville policy. Her $40,000 recovery from the other drivers would exceed the $15,000 available to her under the Harleysville policy. In sum, Aubrey is not "underinsured" and is not entitled to recover under the Harleysville policy.

[*Aubrey v. Harleysville Ins. Cos., supra,* 140 *N.J.* at 406, 658 *A.*2d 1246 (emphasis added) ].

█ Despite NJM's somewhat sophisticated argument employing the statutory parity provision of *N.J.S.A.* 17:28–1.1b to bar coverage, the cited statute merely stipulates that an insured cannot purchase more UIM coverage than the liability coverage that has been purchased. It does not affect the applicability of the UIM coverage. Additionally, NJM's suggested technical application "would distort the meaning of an insured's 'reasonable expectations.'" *Id.* at 404, 658 *A.*2d 1246.

█ "Generally speaking, courts construe insurance policies consistent with the objectively reasonable expectations of the insured." *Aubrey, supra,* 140 *N.J.* at 404, 658 *A.*2d 1246; *Clegg v. New Jersey Automobile Full Underwriting Ass'n,* 254 *N.J.Super.* 634, 639, 604 *A.*2d 179 (App.Div.1992). Since Marshall purchased UIM coverage with NJM in the amount of $500,000, he "could reasonably expect UIM coverage in that amount." *Aubrey, supra,* 140 *N.J.* at 404, 658 *A.*2d 1246.

This is a critical distinction between Marshall's policy and the policy in *Aubrey,* because the NJM policy was Marshall's "own" policy. *See Taylor v. Nat. Union Fire Ins. Co.,* 289 *N.J.Super.* 593, 674 *A.*2d 634 (App.Div.1996) (holding employee had a reasonable expectation to recover UIM benefits under employer's policy as a named insured despite having other UIM coverage on family held policy). The plaintiff in *Aubrey* was not a named insured nor an insured under the express terms of the Harleysville policy, but only became an insured by incorporation of the policy's step-down clause. In contrast, Marshall purchased the NJM policy in his own name.

To defeat this reasonable expectation of coverage, a motorcycle exclusion from NJM's UIM coverage, if permissible, would have to be clear and unambiguous. *Cf. Lehrhoff v. Aetna Cas. and Sur. Co.,* 271 *N.J.Super.* 340, 638 *A.*2d 889 (App.Div.1994); *Watson v. Agway Ins. Co., supra,* 291 *N.J.Super.* at 423, 677 *A.*2d 788 ("If the controlling language of an insurance policy supports two

interpretations, one favorable to the insurer and the other favorable to the insured, courts are obligated to adopt the interpretation supporting coverage."). In *Lehrhoff v. Aetna Cas. and Sur. Co., supra,* 271 *N.J.Super.* 340, 638 *A.*2d 889, Lehrhoff was designated as a driver on a policy with Aetna Casualty and Surety Company (Aetna) which insured his father's automobile and provided uninsured motorist (UM) and UIM coverage. While in California, Lehrhoff was injured in an accident with an unidentified motorist and claimed benefits under the policy. Aetna denied the claim based upon the policy's definition of a family member as "a person related to you by blood, marriage or adoption *who is a resident of your household.*" *Id.* at 345, 638 *A.*2d 889 (emphasis added).

We held that boilerplate exclusions could not be used to defeat coverage implied from the express terms of the declaration page. *Id.* at 347, 638 *A.*2d 889. In reaching this conclusion, we observed:

A personal automobile insurance policy is a bulky document, arcane and abstruse in the extreme to the uninitiated, unversed and, therefore typical policyholder. We are persuaded, therefore, that a conscientious policyholder, upon receiving the policy, would likely examine the declaration page to assure himself that the coverages and their amounts, the identity of the insured vehicle, and other basic information appearing thereon are accurate and in accord with his understanding of what he is purchasing. We deem it unlikely that once having done so, the average automobile policyholder would then undertake to attempt to analyze the entire policy in order to penetrate its layers of cross-referenced, qualified, and requalified meanings. Nor do we deem it likely that the average policyholder could successfully chart his own way through the shoals and reefs of exclusions, exceptions to exclusions, conditions and limitations, and all the rest of the qualifying fine print, whether or not in so-called plain language. We are, therefore, convinced that *it is the declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage.*

[*Id.* at 346–347, 638 *A.*2d 889 (emphasis added) ].

It is the reasonable expectations created by the declaration page that are controlling and, therefore, cannot be defeated "unless the declaration page itself so warns the insured." *Id.* at 347, 638 *A.*2d 889.

*Lehrhoff v. Aetna Cas. and Sur. Co.* was premised in large measure on *Kievit v. Loyal Protect. Life Ins. Co.,* 34 *N.J.* 475, 170 *A.*2d 22 (1961), where the Court stated:

> When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subject *to technical encumbrances or to hidden pitfalls* and their policies should be construed liberally to the end that coverage is afforded "to the full extent that any fair interpretation will allow." [*Id.* at 482, 170 *A.*2d 22 (citations omitted) (emphasis added) ].

The Court also noted "[w]here particular provisions, if read literally, would largely nullify the insurance, they will be severely restricted so as to enable fair fulfillment of the stated policy objective." *Id.* at 483, 170 *A.*2d 22.

To accept NJM's argument would defeat its insured's reasonable expectation where Marshall is listed on NJM's declaration page as an insured with UIM limits of $500,000 as coverage for an accident caused by an underinsured motorist.

### III.

The trial judge accepted NJM's argument that an objective purchaser of automobile insurance could not expect underinsured motorist coverage for an accident incurred on a motorcycle. The linchpin of NJM's argument is the liability exclusion of NJM's policy for accidents incurred through "ownership, maintenance or use of: [a]ny motorized vehicle having *fewer than four wheels.*" (emphasis added).

In accepting NJM's argument, the motion judge grafted liability qualifications on to underinsured motorist provisions and thereby undermined the overall purpose of UIM coverage. "[U]nderinsured motorist coverage is first-party coverage insuring the policyholder and others who have the status as 'insureds' under the policy against the possibility that they will be injured or suffer property loss in an accident caused by a motor vehicle where the liability insurance covering *that other vehicle* is insufficient to pay their full losses." Craig & Pomeroy, *New Jersey Auto Insurance Law* § 26:1 (1997). The focus is on "whether an

*individual tortfeasor's vehicle* is underinsured, not whether *the claimant or the claimant's vehicle* is underinsured." Craig & Pomeroy, *New Jersey Auto Insurance Law* § 27:4-1 (1997). "Coverage is linked to the injured person, not the covered vehicle." *Aubrey v. Harleysville Ins. Cos., supra,* 140 *N.J.* at 403, 658 *A.*2d 1246; *Fernandez v. Selected Risks Ins. Co.,* 82 *N.J.* 236, 241, 412 *A.*2d 755 (1980); *see also Clegg v. New Jersey Automobile Full Underwriting Ass'n, supra,* 254 *N.J.Super.* at 638, 604 *A.*2d 179 (explaining that UIM "coverage is linked to the insured rather than to the covered vehicle"); *Nikiper v. Motor Club of America Cos.,* 232 *N.J.Super.* 393, 399, 557 *A.*2d 332 (App.Div.) (stating that "[t]he purchaser decides the amount of the coverage; the number of tortfeasors does not"), *certif. denied,* 117 *N.J.* 139, 564 *A.*2d 863 (1989). UIM coverage is optional, *N.J.S.A.* 17:28–1.1(b), providing " 'as much coverage as the insured is willing to purchase for his or her protection subject only to the owner's policy liability limits for personal injury and property damages to others.' " *Aubrey v. Harleysville Ins. Cos., supra,* 140 *N.J.* at 403, 658 *A.*2d 1246 (quoting *Prudential Property & Casualty Ins. Co. v. Travelers Ins. Co.,* 264 *N.J.Super.* 251, 259–260, 624 *A.*2d 600 (App.Div. 1993)).

Other jurisdictions have construed UIM coverage provided in automobile insurance policies to cover motorcycle accidents where the motorcycle was not insured under the policy, but the accident was caused by an underinsured motorist. *See e.g., Prudential Prop. & Cas. v. LaRose,* 919 *P.*2d 915, 917 (Colo.Ct.App.1996); *Watts v. General Accident Ins. Co. of America,* 102 *Ohio App.*3d 359, 657 *N.E.*2d 320, 323 (1995); *Bass v. North Carolina Farm Bureau Mut. Ins. Co.,* 332 *N.C.* 109, 418 *S.E.*2d 221, 223 (1992).

In *Watts v. General Accident Ins. Co. of America, supra,* 102 *Ohio App.*3d 359, 657 *N.E.*2d 320, a motorcyclist was involved in an accident with an underinsured motorist and sought recovery of UIM benefits under an automobile insurance policy taken out on his pickup truck. The plaintiff insured his motorcycle without UIM coverage under a separate policy with another insurer. On

appeal, the automobile insurer made essentially the same argument now advanced by NJM, that if plaintiff wanted UIM benefits for an accident involving his motorcycle, he should have obtained it under the motorcycle's policy; since he did not, he could not reasonably expect to recover under his auto policy. *Id.* at 362–363, 657 *N.E.*2d at 322. The Ohio court rejected this argument, holding that the motorcyclist could recover under the UIM coverage purchased in his automobile policy, reasoning that "underinsured motorist coverage once purchased follows the insured and not the vehicle." *Id.* at 364, 657 *N.E.*2d at 323.

Similarly in *Bass v. North Carolina Farm Bureau Mut. Ins. Co., supra*, 332 *N.C.* 109, 418 *S.E.*2d 221, a motorcyclist recovered under his automobile policy insuring his car and truck which included UIM coverage, although his motorcycle was insured under a policy which did not include UIM benefits. The North Carolina Supreme Court held that the motorcyclist was "entitled to UIM benefits under his automobile/truck policy regardless of whether he [was] riding in the insured vehicles or on his motorcycle, or just walking down the street." *Id.* at 112, 418 *S.E.*2d at 223 (citation omitted).

■ Consistent with the interpretation of underinsured motorist coverage in *Aubrey*, North Carolina recognizes that "liability insurance is essentially vehicle oriented, while UM/UIM insurance is essentially person oriented." *Smith v. Nationwide Mut. Ins. Co.*, 328 *N.C.* 139, 148, 400 *S.E.*2d 44, 50 (1991). These cases make clear that it is improper to incorporate a policy's liability exclusions, which are vehicle oriented, into the underinsured motorist provisions because the two sections provide entirely separate and distinct types of coverage.

Marshall could reasonably expect to have UIM coverage available under his automobile policy, despite purchasing UIM coverage under Universal's motorcycle policy. The determining factor under the NJM policy is whether Marshall, as the insured, was underinsured in relation to Scheckinger's (the tort-feasor) vehicle. Whether Marshall was on a motorcycle or walking down the street

is of little significance. He could reasonably expect to be insured under both policies as a named insured paying premiums to insure against bodily injury caused by an underinsured motorist.

Reversed.

LANDAU, J.A.D., concurring.

I concur in the result. It is true that the New Jersey Manufacturers' policy provides UIM coverage for bodily injuries sustained if caused by an accident with an underinsured motorist. In my view, UIM coverage for this motorcycle accident should be found, but only by reason of the ambiguity and possibility for policyholder confusion inherent in the NJM policy language. The NJM policy says it will provide UIM coverage to an insured for "damages ... caused by an accident with an underinsured motor vehicle ..." As the majority opinion points out however, NJM's policy also excludes any liability coverage for accidents arising from use of certain vehicles such as motorcycles. The significance of this absence of liability coverage for a motorcycle accident lies in the statutory limitation of UIM coverage in an automobile policy to the amount of liability coverage provided in the policy. *See N.J.S.A.* 17:28–1.1b. NJM argues that it did not and would not provide liability coverage for the more dangerous motorcycle exposure (at least, by inference, not at automobile rates), and that Marshall's UIM coverage arising out of motorcycle use cannot exceed the non-existent motorcycle liability coverage by reason of section 28–1.1b.

This is an eminently fair argument. In effect, Marshall may have succeeded in buying UIM coverage for motorcycle accidents at regular automobile rates, without the knowledge of the automobile liability carrier. Unfortunately, neither Section 28–1.1b (quoted in the majority opinion) nor the language of the NJM policy address this problem.

Objectively, however, an ordinary insured could reasonably read the NJM policy to provide UIM coverage for any kind of motor vehicle accident. It is interesting to note that, prior to endorse-

ment, the Universal policy contained a clause which expressly limited its UIM coverage to accidents involving the insured's motorcycle, i.e., to accidents for which liability coverage also exists. Subject to compliance with applicable law, a similar UIM limitation might have been clearly and unambiguously expressed in the NJM policy. As it was not, I concur with the result reached by the majority.