741 A.2d 619 (1999)
326 N.J. Super. 407
OHIO CASUALTY INSURANCE COMPANY, Plaintiff-Respondent,
v.
The ESTATE OF Shannon Kay WITTKOPP, Stanley Eiseman, and Sandra Eiseman, Defendants, and
Hanover Insurance Company, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued September 29, 1999.
Decided December 16, 1999.
*620 Mark S. Hochman, Wall, for defendant-appellant (Stephen E. Gertler, attorney; Mr. Hochman, on the brief).
George A. Prutting, Jr., Audubon, for plaintiff-respondent (Mr. Prutting and Joseph T. Walsh, on the brief).
Before Judges KLEINER, PAUL G. LEVY and CARCHMAN.
The opinion of the court was delivered by
KLEINER, J.A.D.
On May 20, 1995, Shannon Kay Wittkopp ("Shannon"), then age fourteen, was a pedestrian on County Road 620 in Shamong Township when she was struck and killed by an insured driver, Robert A. Kinsel, Jr. Kinsel's automobile liability insurance carrier provided him with $100,000 comprehensive liability coverage.
Shannon's natural parents were divorced in either 1985 or 1986.[1] Under the terms of their divorce decree, physical custody of Shannon and her younger sister was awarded to Shannon's mother, Sandra, who thereafter remarried Stanley Eiseman (the "Eisemans"). Shannon's father, Steven Wittkopp, also remarried (the "Wittkopps"). Pursuant to their parents' agreement, both Shannon and her younger sister visited their father on alternate weekends and on alternate holidays. The Wittkopps' residence provided both daughters with a bedroom that they shared during visitation periods.[2] Both daughters maintained a separate wardrobe at their father's home, apparently to avoid transporting clothing and other personal items between the homes of their respective parents during visitation periods. Steven Wittkopp provided support for his daughters and, as of Shannon's death, was current in the payment of his child support.
The Eisemans were insured under a comprehensive liability policy issued by defendant Hanover Insurance Company ("Hanover"). Hanover's policy provided $500,000 in underinsured motorist coverage.
The Wittkopps were insured under a comprehensive automobile liability policy issued by plaintiff Ohio Casualty Insurance Company ("Ohio"). Ohio's policy provided $300,000 in underinsured motorist coverage.
On February 28, 1998, all claims on behalf of Shannon or her estate were settled for $480,000. The tortfeasor Kinsel's insurer contributed the full extent of its coverage, $100,000. A dispute arose between *621 Hanover and Ohio as to each carrier's respective liability for the $380,000 balance of the settlement. Hanover took the position that it was responsible for 62.5% of the $380,000 balance of the settlement, and it paid that sum to Shannon's Estate. Hanover looked to Ohio to pay 37.5% of the settlement balance, which equaled $142,500.
Ohio denied any responsibility as to the settlement balance. It alternatively argued: (1) Shannon was a resident of the Eiseman household and therefore Shannon was not insured for underinsured coverage by Ohio; and (2) even if Shannon was insured for underinsured coverage under the Wittkopp policy, Ohio was an excess carrier, and thus it had no responsibility to contribute to the settlement claim asserted by Shannon's estate.
To resolve this dispute, Ohio instituted a declaratory judgment action seeking to vindicate its position. Hanover filed an answer and counterclaim. The issue was presented to a motion judge on cross-motions for summary judgment. The motion judge concluded that Shannon was a resident of the Eiseman home, as Sandra Eiseman had both legal and residential custody. He therefore concluded that only Hanover was responsible for the balance of the settlement. Alternatively, the judge concluded that even if it could be said that Shannon was insured for underinsured coverage under the Ohio policy, the policy provided only excess coverage and thus Hanover was still responsible for the entire settlement. Although we concur with the first conclusion respecting residency, we disagree with the ultimate conclusion that the Ohio policy only provided excess coverage. We therefore reverse.
We conclude that, under the facts of this case and based upon the policy terms of both the Hanover and Ohio policies, Shannon was insured for underinsurance coverage by both insurance carriers and each carrier should share responsibility for the settlement balance pro rata. Our conclusion is also guided by the reasonable expectations of each insured and upon recent changes in matrimonial law which give a non-custodial parent a credit against child support obligations where the non-custodial parent visits with a child for more than twenty-four hours per week. See Pressler, Current N.J. Court Rules, App. IX-A (2000); see also Pascale v. Pascale, 274 N.J.Super. 429, 441-42, 644 A.2d 638 (App. Div.1994), aff'd in part, rev'd in part, 140 N.J. 583, 660 A.2d 485 (1995).

I.
It is undisputed that Shannon is insured under the Hanover policy purchased by the Eisemans.
Ohio contends that Shannon was not insured under its policy purchased by the Wittkopps because Shannon was not a resident in the Wittkopps' household. The Ohio policy states in Part-C "uninsured motorist coverage" (which includes underinsured coverage):
We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of "bodily injury."
1. sustained by the "insured."
The policy defines "insured" as "you or a family member" and further defines a "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household."
Hanover asserts that the "family member" language should control the interpretation of the policy. Ohio responds that the definition of "family member" should be construed to mean resident relative, pursuant to the "Definitions" section of the policy. This is the more plausible interpretation of the policy's language. Determining whether someone is a resident relative, obviously, requires that residency and relationship be shown. It is undisputed that Shannon is the biological daughter of Steven Wittkopp; therefore, the only issue is whether she maintained a residence at her father's home.
*622 Residency has a well-documented definition in New Jersey. It is not interpreted as a single place of occupancy, "[a] residence and a domicile are not synonymous." Michaud v. Yeomans, 115 N.J.Super. 200, 205, 278 A.2d 537 (Law 1971). "A person may have more than one residence but he may not have more than one domicile." Ibid. The Ohio policy clearly states that a "family member" is a relative that is a "resident of your [policy holder's] household" (emphasis added). Neither insurer asserts the Ohio policy intended residence to mean domicile. It appears from the plain meaning of the policy that Ohio did not intend to limit its coverage to domiciliaries. Therefore, Shannon is not limited by the policy to one place of residence.
Children of divorce are commonly recognized as maintaining more than one residence. These children often have to live part-time at either parent's home and are considered residents of both homes. Miller v. United States Fidelity & Guar. Co., 127 N.J.Super. 37, 43-44, 316 A.2d 51 (App.Div.1974). "It is common experience that actual living accommodations for a child of separated or divorced parents may frequently change...." Sjoberg v. Rutgers Cas. Ins. Co., 260 N.J.Super. 159, 163, 615 A.2d 660 (App.Div.1992). Absence from a parent's home, even for several months, does not terminate the child's residency without additional factors. Id. at 164, 615 A.2d 660. Dual residency can extend far into the adult years, even after the child has moved to another state, where he or she work, pay taxes, and own property. Arents v. General Accident Ins. Co., 280 N.J.Super. 423, 426, 655 A.2d 936 (App.Div.1995). Determining the place of residence requires the examination of many factors. To determine residency, "the totality of the circumstances surrounding the relationship of parent and child, as well as the parental obligation, must be considered in determining whether insurance coverage of a parent extends to the child by reason of residency in the parents' household." Sjoberg, supra, 260 N.J.Super. at 164-65, 615 A.2d 660.
To make the determination in the present case, the motion judge and both parties relied heavily on Garrison v. Travelers Ins. Co., 261 N.J.Super. 209, 618 A.2d 387 (Law Div.1992). Although Garrison has no binding authority on this court, it is instructive, setting out a test for determining whether a child is a resident relative of a non-custodial parent. The test was borrowed from Countryside Cas. Co. v. McCormick, 722 S.W.2d 655 (Mo.Ct.App. 1987). It examines several factors in determining the residence of a child:
the age of the child at the time of the accident, (the younger the child the greater the chances that it will be a resident of both households); whether the parent had reasonable visitation rights; whether the parent was current with child support; whether the parent and the child have a good relationship; and whether the child had a bedroom or separate wardrobe at the non-custodial parents house.... [T]hese factors should be considered in the aggregate in order to justify the awarding of insurance benefits ...

[Garrison, supra, 261 N.J.Super. at 212, 618 A.2d 387 (citing Countryside, supra, 722 S.W.2d at 658).]
In the present case, the relationship between Shannon and her non-custodial father satisfies each element of the Garrison test. At the time of the accident, Shannon was fourteen years old. Steven Wittkopp had a parenting time arrangement with his former wife allowing Shannon to visit the Wittkopps' residence every other weekend. Shannon spent holidays with her father and attended special events with him. He was current in his child support and paid his support regularly.[3] The relationship between Shannon and her father is described *623 by his ex-wife as "good." Shannon and her sister had a room in their father's apartment where they kept clothes and other personal items. At the time of the accident, the Wittkopps were purchasing a house so that both Shannon and her sister could have their own rooms. Considering these factors in the aggregate, we conclude that Shannon was a resident relative of the Wittkopps and entitled to the insurance policy coverage which he maintained. See ibid.
Further, the reasonable expectations of the Wittkopps must also be considered when determining whether Shannon was covered by Ohio's policy. Insurance policies are read with great amounts of deference toward the policyholder's expectations. Lehrhoff v. Aetna Cas. & Sur. Co., 271 N.J.Super. 340, 347, 638 A.2d 889 (App.Div.1994). In some cases, the reasonable expectations of the insured may usurp the language of the policy. Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 483, 170 A.2d 22 (1961). Insurance contracts are to be strictly construed against the insurer, thereby giving the insured the benefit of any ambiguity in the policy. Tomaiuoli v. United States Fidelity & Guar. Co., 75 N.J.Super. 192, 200, 182 A.2d 582 (App.Div.1962).
The Wittkopps purchased an insurance policy that on its face covered "family members" that reside in their household. This definition included blood relatives, adopted, and foster children. The policy made no mention as to the requirements for residency nor did it make any provisions for non-custodial parents. Ambiguities in insurance policies open to two interpretations should be decided in favor of the insured. Tomaiuoli, 75 N.J.Super. at 201, 182 A.2d 582 (citing Dittmar v. Continental Cas. Co., 29 N.J. 532, 542, 150 A.2d 666 (1959)). In the present case, the denial of coverage would fall short of the reasonable expectations of the Wittkopps or any parent similarly situated.
The plain language of the Ohio policy does not exclude Shannon from coverage. There is substantial authority to support the position that she resided at both parents' homes for the purposes of insurance coverage. See Miller, supra, 127 N.J.Super. at 43-44, 316 A.2d 51; Sjoberg, supra, 260 N.J.Super. at 163-65, 615 A.2d 660; Arents, supra, 280 N.J.Super. at 426, 655 A.2d 936. In order to fulfil the reasonable expectation that Shannon would be covered by the Wittkopps' policy, we find that Shannon was a resident relative of the Wittkopps and an insured under the Ohio policy.

II.
Hanover asserts that Shannon Wittkopp is covered by the Ohio Casualty policy and, therefore, her estate is entitled to a pro rata recovery from both policies. We agree.
Both policies at issue have nearly identical "other insurance" clauses.
The Hanover policy provides:
If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectable insurance.
The Ohio Casualty policy provides:
If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own shall be excess over any other collectable insurance.
The accident in this case does not automatically place either insurance as primary. A third party caused Shannon's death. Therefore, neither Ohio nor Hanover is the primary insurer.
*624 Given that Shannon was covered by both parent's policies, the logical conclusion is to divide the settlement in a pro rata fashion. It is a common misconception that pro rata distribution is mandated by statute in underinsured motorist cases. Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 420 n. 1, 710 A.2d 412 (1998). Pro rata division of settlements is mandated only in uninsured motorist cases. N.J.S.A. 17:28-1.1(c);[4]Magnifico, 153 N.J. at 420 n. 1, 710 A.2d 412. This does not preclude a pro rata division in other circumstances.
In Universal Underwriters Ins. Co. v. New Jersey Mfrs. Ins. Co., the insured was injured in an accident. 299 N.J.Super. 307, 311, 690 A.2d 1104 (App.Div.), certif. denied, 151 N.J. 73, 697 A.2d 546 (1997). Two policies were at odds. We concluded that neither policy's "other policy" provisions declared itself or the other as the primary insurer. Id. at 315, 690 A.2d 1104. We held that if neither policy is primary, losses must be divided on a pro rata basis, because the "other insurance" clauses asserted that each policy would pay for its share of the loss. Id. at 315, 690 A.2d 1104.
In this case there are two policies, neither of which is primary. Both policies agree to share losses if applicable. The most equitable distribution of the proportion of this loss is on a pro rata basis. The pro rata distribution may be divided, as it is in uninsured motorist cases, by comparing the total loss with the amount of coverage of each policy. The parties in this case have already agreed upon a percentage of distribution of 62.5% for Hanover and 37.5% for Ohio. This is the fairest manner in which to distribute the settlement costs.
The motion judge felt compelled to reach a different result based upon his interpretation of Magnifico, supra, 153 N.J. 406, 710 A.2d 412; New Jersey Mfrs. Ins. Co. v. Breen, 153 N.J. 424, 710 A.2d 421 (1998); and Grant v. Amica Mutual Ins. Co., 153 N.J. 433, 710 A.2d 426 (1998). Each of those cases is clearly distinguishable from the facts presented here and none support the conclusion that the settlement should be distributed on a primary and excess insurance basis.
As noted, the insurers here have agreed that if this court concludes that Ohio's policy insured Shannon Wittkopp and that the settlement should be distributed on a pro rata basis, the insurers will divide the settlement 62.5% or $237,500 attributable to Hanover and 37.5% or $142,500 attributable to Ohio.
We therefore reverse.
NOTES
[1] The record on appeal does not reflect the exact date that Shannon's parents separated nor does it reflect the exact date of their divorce.
[2] As of the date of Shannon's death, the Wittkopps were in the process of buying a new residence which would permit each daughter to have her own bedroom during visitation periods.
[3] Mrs. Eiseman certified that in the first months following her divorce, Wittkopp's support payments were erratic but soon thereafter, he paid all arrears and regularly supported his daughters thereafter.
[4] If the insured had uninsured motorist coverage available under more than one policy, any recovery shall not exceed the higher of the applicable limits of the respective coverages and the recovery shall be prorated between the applicable coverages as the limits of each coverage bear to the total of the limits.

[17:28-1.1(c) ].