Cheryl Patricia PARSON, in her Capacity as the Personal Representative of the Estate of Gary Lloyd Wilson; Sabrina Wilson and Desirea Wilson, Minor Children by and through their Next Friend and Natural Guardian, Cheryl Parson; and Cory Wilson, Appellants,

v.

MARATHON OIL COMPANY, Appellee.

No. S–7894.

Supreme Court of Alaska.

July 2, 1998.

Jim M. Boardman, Brena & McLaughlin, P.C., Anchorage, and Cathleen Nelson McLaughlin, Hagans, Ahearn, McLaughlin & Webb, Anchorage, for Appellants.

Michael C. Geraghty and Sarah Diemer Moyer, DeLisio Moran Geraghty & Zobel, Anchorage, for Appellee.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

*OPINION*

PER CURIAM.

I.  *INTRODUCTION*

Cheryl Parson sued Marathon Oil Company (MOC) for the wrongful death of her ex-

husband, Gary Wilson. MOC moved for summary judgment, arguing that its conduct was not the proximate cause of Wilson's death. The superior court held a hearing at which it granted Parson time to file a supplemental brief on the issue of whether Alaska should adopt the loss-of-chance doctrine. After numerous deadlines for Parson to file the supplemental brief had passed, Parson requested Alaska Civil Rule 56(f) relief. The court granted MOC's motion for summary judgment, thereby implicitly denying Parson's motion for Rule 56(f) relief. Parson appeals both the court's grant of summary judgment to MOC and its denial of her request for Rule 56(f) relief. We conclude that it was an abuse of discretion to deny Parson Rule 56(f) relief. We reverse the court's decision and remand for further proceedings.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

In July 1993 Gary Wilson was employed by Alaska Petroleum Contractors (APC). He was assigned to work on the Dolly Varden oil platform, located in the Cook Inlet. While working on the Dolly Varden platform, Wilson slept and ate his meals on the Steelhead platform. MOC owns and operates the Dolly Varden and Steelhead platforms. On July 19, 1993, after Wilson finished work on the Dolly Varden platform, he returned to the Steelhead platform to eat and sleep.

At approximately 1:30 A.M. on July 20 Wilson informed Derik W. Barefield, foreman/supervisor for APC, that he was having chest pains. Joe Chumley, Emergency Medical Technician (EMT) for MOC, was contacted. Barefield and Chumley monitored Wilson by taking his pulse and talking with him. At approximately 2:50 A.M. Chumley called for Ray Schemanski, a MOC production foreman. Schemanski was awakened, told that Wilson was not feeling well, and asked to take a look at Wilson. Schemanski checked Wilson's pulse and asked the men a few questions. According to Schemanski, Wilson was "full[y] alert and basically said he wasn't feeling well, [that his pain] kind of felt like

indigestion." At 3:02 A.M. Schemanski decided to call for an emergency helicopter to take Wilson off the platform in order to get him "checked out." Barefield left with Wilson in the helicopter. At approximately 4:45 A.M. the helicopter arrived at Central Peninsula General Hospital in Soldotna. Wilson was pronounced dead at approximately 5:26 A.M.

Dr. Donald R. Rogers performed an autopsy on Wilson. Dr. Rogers's final diagnosis stated that Wilson's death was caused by:

1) Ruptured thoracic dissecting aortic aneurysm secondary to cystic media necrosis.

2) Calcific aortic stenosis.

3) Severe coronary arteriolosclerosis with diffuse myofibrosis.

4) Pulmonary emphysema.

In his affidavit, Dr. Rogers stated that it was worth emphasizing that Mr. Wilson had severe heart disease at the time of his death. His heart was markedly enlarged, secondary to severe calcific aortic stenosis, or hardening of the aortic valve. He also had severe arteriolosclerosis which is a thickening and hardening of the small arteries serving the heart. This led, in turn, to myocardial fibrosis.

### B.  Proceedings

In July 1995 Cheryl Patricia Parson, as personal representative of Wilson's Estate and of their minor children Sabrina and Desirea Wilson, filed suit against Marathon Petroleum Company (MPC) and Era Aviation, Inc. (Era).[1] MPC filed a motion to dismiss because MPC did not have an "interest or connection with the offshore platform in question which could conceivably give rise to any liability." Parson opposed MPC's motion to dismiss; in the alternative, Parson moved to substitute MOC for MPC. In February 1996 the court granted Parson's motion to substitute MOC for MPC.

---

**1.** Era owned and operated the helicopter called to medi-vac Wilson off the Steelhead platform. Parson alleged that Era breached the duty of care it owed to Wilson and that Era's breach was a direct and proximate "substantial factor" in bringing about Wilson's death.

In March 1996 MOC moved for summary judgment.[2] In support of its motion MOC argued that, even if it owed and breached a duty to Wilson, its breach was not a proximate cause of Wilson's death. MOC supported its motion with the affidavit from Dr. Rogers, who performed Wilson's autopsy. Dr. Rogers opined that "different treatment during this period or faster evacuation of Mr. Wilson to Central Peninsula General Hospital, or any other hospital in Alaska, would not have changed the outcome, and he would have died on July 20." In opposing summary judgment, Parson presented an affidavit from Dr. Stephen Hubbard. Dr. Hubbard opined that "[b]ased on the skills of the Starr cardiovascular surgeons,[3] I believe that if Gary Wilson was transported promptly to Providence Hospital where they are equipped to handle these types of emergency situations, Mr. Wilson would have had a chance at survival." In its reply memorandum, MOC argued that Dr. Hubbard's opinion that Wilson had "a chance" of survival did not create a genuine issue of material fact. Specifically, MOC argued that, for its conduct to be considered a proximate cause of Wilson's death, Alaska law requires that its conduct have been more likely than not a substantial factor in Wilson's death. A chance, MOC argued, does not meet the more-likely-than-not requirement. Additionally, MOC argued that Alaska courts have not adopted, and should not now adopt, the "loss-of-chance" doctrine.[4]

The court held oral argument on the motion for summary judgment in June 1996. At oral argument MOC renewed its contentions that its conduct was not the proximate cause of Wilson's death and that the allegation that MOC had reduced Wilson's chance of survival was not enough to create a material issue of fact. Parson argued that, considered as a whole, Dr. Hubbard's affidavit should be read to mean that "there was a chance of survival and that it was above fifty-fifty or

more likely than not." Parson stated that Dr. Hubbard "doesn't reach the ultimate conclusion of what the percentage of survival was" because he was only asked whether it was true that Wilson had no chance of survival. Furthermore, Parson argued, MOC brought up for the first time in their reply brief the issue of the loss-of-chance doctrine.

The court stated that it was not going to grant MOC summary judgment at that time, even though it was "pretty sure" that it could. It declined to grant summary judgment because: (1) "part of the information [it would] be relying on comes from the reply briefs[,]" and (2) there was an incomplete record. The court gave Parson twenty days to supplement her briefing and to reply to the issues raised in MOC's reply brief. The court disagreed with Parson's interpretation of Dr. Hubbard's affidavit. The court stated that "I can't read [Dr. Hubbard's] affidavit to say this guy would've survived because it doesn't say that. It says there's a chance he would've survived." While the court did not believe that Dr. Hubbard's statement said that Wilson had more than a chance of survival, it noted that "[t]he question of whether or not he has to say that it's more likely than not is a truly legal question but I want to give you an opportunity to paraphrase, to put your best affidavit forward." Parson requested that, within that twenty days, she be allowed to take the deposition of Mr. Ackels, the helicopter pilot. In light of Parson's request, the court made the supplemental brief due twenty days after she took the deposition of Ackels. Lastly, the court added that if Parson felt that "something else needs to be in that record, [and she] can't get it in there in this time frame, then [she should] move to continue the consideration of the motion until [she] can get it in the record."

Parson took Ackels's deposition on July 9. Thus, the initial due date for her supplemen-

---

2. Era moved for summary judgment at the same time as MOC. After the superior court granted Era and MOC summary judgment, Era and Parson settled.

3. According to Dr. Hubbard, the Starr Group is preeminent in the area of cardiovascular surgery.

4. "In the typical loss of a chance case, a plaintiff already has a condition ... unlike a healthy plaintiff in most personal injury cases. A plaintiff claims the negligence has increased the risk of harm by hastening or aggravating the effect of the pre-existing condition or risk." *McKellips v. Saint Francis Hosp., Inc.,* 741 P.2d 467 (Okla. 1987).

tal brief was July 29. On July 25 Parson sent a letter to MOC stating that she wanted to take the depositions of Rogers, the pathologist who performed the autopsy, and Chumley, the Marathon EMT. Parson noted that in order to have enough time to take the depositions she needed an extension of the supplemental briefing deadline. She informed MOC that she had requested such an extension from the court. In an undated order, the court extended the due date for Parson's supplemental briefing to September 15. That day passed without Parson filing her supplemental brief. On October 9 Parson filed a single motion entitled, "Notice to the Court of Plaintiff's Efforts to Depose Dr. Rogers and Mr. Chumley, Motion to Compel Depositions and Request for Briefing Schedule." MOC joined in Era's opposition to Parson's motion. On October 22 Parson replied to MOC's and Era's opposition. In her reply, Parson characterized her request as a Civil Rule 56(f) motion. On October 17 the court granted MOC's motion for summary judgment and implicitly denied Parson's motion to compel depositions and to reschedule briefing. On October 30 the court entered final judgment. This appeal followed.

### III. *DISCUSSION*

#### A. *Standard of Review*

■ We review the denial of a Rule 56(f) motion for abuse of discretion. *See Gamble v. Northstore Partnership,* 907 P.2d 477, 485 (Alaska 1995).

■ We review a grant of summary judgment *de novo. See Nielson v. Benton,* 903 P.2d 1049, 1052 (Alaska 1995). We will affirm a summary judgment if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *See In re Estate of Evans,* 901 P.2d 1138, 1140 (Alaska 1995). When making this determination, we draw all reasonable inferences in favor of the non-moving party. *See Bishop v. Municipality of Anchorage,* 899 P.2d 149, 153 (Alaska 1995). In reviewing a grant of summary judgment we may affirm the superior court on any basis appearing in the record. *See Far North Sanitation v. Alaska Pub. Utils. Comm'n,* 825 P.2d 867, 869 n. 2 (Alaska 1992).

#### B. *It Was an Abuse of Discretion to Deny Parson Rule 56(f) Relief.*

Rule 56(f) provides that

[s]hould it appear from the affidavits of a party opposing the [summary judgment] motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

■ We stated in *Jennings v. State,* 566 P.2d 1304, 1313 (Alaska 1977) that "requests made pursuant to Rule 56(f) should be freely granted." Rule 56(f) requests, however, should not be granted to "'parties who have been lazy or dilatory.'" *Id.* (quoting 10 Charles A. Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2740, at 725–26 (1973)); *see also Brock v. Weaver Bros.,* 640 P.2d 833, 837 (Alaska 1982) (concluding that the court did not abuse its discretion in denying Rule 56(f) relief because "approximately three years had elapsed since the accident ... [and] no discovery ... had been undertaken"). We have also stated that "a litigant seeking relief under Rule 56(f) must *'make it clear* to the trial court and the opposing party that he opposes the summary judgment motion on this ground.'" *Gamble,* 907 P.2d at 485 (quoting *Jennings,* 566 P.2d at 1313–14) (emphasis in original). While the party seeking Rule 56(f) relief must do so unambiguously, she need not specifically mention Rule 56(f) or file a separate motion. *See id.* at 486 (stating that this court has never required that "a party requesting a continuance for the purpose of opposing summary judgment must specifically mention Rule 56(f) or ... file a separate motion").

Parson argues that the superior court abused its discretion when it refused her request for additional time to submit supplemental materials. Parson argues that her request for Rule 56(f) relief was unambiguous and that her motion and affidavit identify Rule 56(f) as the basis for the requested

relief. She argues that she was not dilatory in her discovery efforts for two reasons: (1) MOC had refused to participate in discovery until the substitution order was signed in February 1996; and (2) MOC played a game of "hot potato" when she was trying to schedule the Rogers and Chumley depositions.

MOC argues that the court's refusal to grant Parson's motion was not an abuse of discretion. MOC states that Parson's failure to request depositions from Rogers and Chumley before July 25 (at a time her supplemental brief was due on July 29) was dilatory. MOC further argues that Parson missed two deadlines set by the court (July 29 and September 15) and had not yet filed her supplemental materials when the court granted MOC's motion for summary judgment in October. Lastly, MOC notes that, while Parson did specifically mention Rule 56(f) relief, she did not do so until she filed her reply to the opposition to her motion to compel depositions. She filed her reply on October 22, although summary judgment had been granted on October 17; thus, MOC argues, "Parson never properly made a Rule 56(f) request[,] and relief under this provision cannot be sought for the first time on appeal." [5]

For the following reasons, we conclude that it was an abuse of discretion to deny Parson's motion for Rule 56(f) relief.

1. *Parson met the low threshold requirement for requesting Rule 56(f) relief.*

■ This court does not require that a party specifically identify Rule 56(f) when seeking a continuance; rather, a party need only provide "adequate reasons explaining why the party cannot produce facts necessary to oppose summary judgment within the original time frame." *Gamble,* 907 P.2d at 485–86. Parson's motion to compel depositions and to reschedule briefing stated that

she was unable to file her supplemental brief without having taken Rogers's deposition. Parson also stated that she had attempted to schedule these depositions but that "the Defendants [had] avoided the scheduling" of them. Thus, although it was not until she filed her reply that she specifically identified Rule 56(f), her original motion was adequate to constitute a request for Rule 56(f) relief.

2. *Parson was not dilatory in her discovery efforts.*

■ Seemingly, Parson's only errors were not filing her supplemental memo by September 15, and waiting until October 9 to request an extension. While Parson could have been more diligent in her efforts to either file her supplemental brief by the deadline, or request additional time, we do not believe her conduct was so dilatory as to justify denying her Rule 56(f) relief.

Parson notified the court that in order to prepare her supplemental memorandum she needed to depose Rogers. In her motion to compel depositions Parson stated that "[a]s soon as Marathon makes Dr. Rogers available then Plaintiff can take his deposition and will then promptly supplement the pleadings." [6] Parson was actively attempting to arrange a time to take Rogers's and Chumley's depositions. Parson first requested to take their depositions on July 25, 1996. MOC did not respond to Parson's request until August 30. Over the next two weeks Parson attempted to schedule the depositions. Parson's efforts to depose Rogers and Chumley were largely unsuccessful due to MOC's unwillingness to agree to a specific date and time. As a result of the numerous delays caused by MOC's uncooperativeness, the superior court granted summary judgment to MOC before Parson had the opportunity to take the two depositions.

---

**5.** Parson responds that "[t]here is nothing ambiguous about Plaintiffs' continuing and numerous requests to defense counsel and the court as to the need for the depositions prior to filing the supplemental briefing." Parson notes that this court has held that a specific request for Rule 56(f) relief is not required and that her "request for a 56(f) continuance was based on the perpetual refusal of Defendants to participate in necessary depositions and the need for that discovery prior to submittal of [her] supplemental brief."

**6.** While Parson's motion stated that she needed Rogers's affidavit to complete her supplemental pleadings, her motion notified the court that she had been unsuccessful in her attempt to depose *both* Chumley and Rogers.

Because we conclude that it was an abuse of discretion to deny Parson Rule 56(f) relief, we need not address whether summary judgment was appropriate on the merits or whether Alaska should adopt the loss-of-chance doctrine.

## IV. CONCLUSION

The order granting MOC summary judgment and implicitly denying Parson Rule 56(f) relief is VACATED and the judgment REVERSED. This case is REMANDED with instructions to grant Parson additional time to take the depositions of Rogers and Chumley and to submit her supplemental brief.