Teisha SIMMONS, Appellant,

v.

INSURANCE COMPANY OF NORTH AMERICA, Appellee.

No. S–9256.

Supreme Court of Alaska.

Feb. 16, 2001.

---

**58** 

Michael W. Flanigan, Walther & Flanigan, Anchorage, for Appellant.

Michael D. Corey, Sandberg, Wuestenfeld & Corey, Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

*OPINION*

FABE, Justice.

## I. *INTRODUCTION*

When Teisha Simmons was injured in a car accident, she sought underinsured motorist benefits from the insurer of her father's business. The insurer declined coverage because the policy did not list Simmons's father as a named insured. Although Simmons sought reformation of the policy, the superior court granted summary judgment to the insurer, ruling that, even if the policy were to be reformed to include the father as a named insured, persons insured under their trade names are not "individuals" to whom family coverage extends. Because we conclude that when a business owner acquires insurance under a trade name, coverage extends to that individual owner as well as the business, we reverse the superior court's decision and remand for a determination of whether the policy should be reformed.

## II. *FACTS AND PROCEEDINGS*

### A. *Factual Background*

On August 20, 1992, fourteen-year-old Teisha Simmons was in a serious car accident while riding as a passenger in her friend's car. The accident rendered Simmons a quadriplegic with damages far exceeding the $100,000 that she recovered from the driver's insurance company. Teisha Simmons sought underinsured motorist benefits from the Insurance Company of North America (INA) under a policy issued to her father's business, Happy Puppy Enterprises, but the policy did not specifically include her father as a named insured.

Teisha's father, James Walldow, began a business called "Happy Puppy Enterprises" in 1990 with his live-in girlfriend, Carol Mills.[1] They ran a bed and breakfast and a school bus operation. When Walldow and Mills bought the bus in 1990, they sought insurance for it under both of their names, doing business as Happy Puppy Enterprises for the years 1990–93.

---

1. Teisha Simmons is the daughter of James Walldow and Marie Simmons, an unmarried couple who lived together from 1972 until 1981. When James and Marie separated in 1981, Teisha remained close to both parents and visited her father from time to time.

The previous owners of Walldow and Mills's school bus had insured it under an INA policy issued by the Stein Insurance Agency. Before Walldow and Mills acquired the school bus, however, the Stein Agency had agreed with INA's parent organization CIGNA not to write new business policies but only to service existing ones. Thus, when Walldow and Mills sought insurance for the school bus, the Stein Agency could not accept Walldow and Mills's application for a new insurance policy. Instead, the Stein Agency asked INA to issue an endorsement to change the name of the insured to Carol Mills d/b/a Happy Puppy Enterprises. INA agreed to do so, and issued an endorsement changing the named insured to Carol Mills d/b/a Happy Puppy Enterprises. The policy did not list James Walldow as a named insured, but it did list him as a "driver."

After Teisha's accident in 1992, she made an underinsured motorist (UIM) claim on the INA policy issued to Happy Puppy Enterprises. The UIM endorsement provides that INA "will pay all sums the insured is legally entitled to recover as damages from the owner or driver of an 'uninsured motor vehicle' or 'underinsured motor vehicle.'" The policy states that UIM coverage extends to the insured and, if the insured is an "individual," to "any family member."

### B. *Procedural History*

After INA denied Simmons's UIM claim, she initiated this lawsuit in October 1995. INA moved for summary judgment in September 1997 on the ground that Walldow was not a named insured on the policy. Simmons cross-moved for summary judgment, arguing that Walldow and Mills were partners in Happy Puppy Enterprises, that the policy should be reformed to meet the parties' expectations to include Walldow as a named insured on the policy, and that as Walldow's daughter, Simmons was covered by the UIM provision.

INA responded that the contract cannot be reformed because Happy Puppy Enterprises is Carol Mills's sole proprietorship, and because no partnership exists between Mills and Walldow. INA also argued that there was no mutual mistake in only listing Mills as the insured on the INA policy, because only she is listed on the Happy Puppy Enterprises business license. Simmons replied that Walldow and Mills have operated Happy Puppy Enterprises as a de facto partnership, even if the business license was in Mills's name only.

Superior Court Judge Rene J. Gonzales heard oral argument in March 1999. The court determined that UIM coverage only extends to family members of an insured "individual," that "coverage did not extend to family members of partners or employees in the business," and that the policy therefore did not confer coverage upon Simmons. Simmons filed a motion for reconsideration, which the court denied, and Simmons subsequently appealed.

### III. *STANDARD OF REVIEW*

We review the superior court's decision to grant summary judgment de novo.[2] We will affirm that decision "if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law."[3] In making this determination, "we draw all reasonable inferences in favor of the non-moving party."[4] Moreover, we may affirm the superior court's decision to grant summary judgment on "any basis appearing in the record."[5]

We also review de novo the interpretation of contract language, which is a question of law.[6] We look to four factors when interpreting contracts: (1) the language of the disputed policy provisions; (2) the language of other provisions in the policy; (3) relevant extrinsic evidence; and (4) case law interpreting similar provisions.[7]

2. See *Parson v. Marathon Oil Co.*, 960 P.2d 615, 618 (Alaska 1998).

3. *Id.*

4. *Id.*

5. *Id.*

6. See *Cox v. Progressive Cas. Ins. Co.*, 869 P.2d 467, 468 n. 1 (Alaska 1994).

7. *See id.*

## IV. DISCUSSION

### A. Simmons Has Standing to Seek Reformation of the INA Policy Naming "Carol Mills d/b/a Happy Puppy Enterprises" as the Insured.

■ INA briefly argues that because Simmons is not a party to the insurance policy, she lacks standing to sue for its reformation. INA's argument warrants little discussion.

■ In order to have standing, a party need only demonstrate "a sufficient 'personal stake' in the outcome of the controversy."[8] In this case, Simmons stands to gain considerably if the contract is reformed to include Walldow as a named insured, for then the policy may confer coverage on her as a family member.

■ In addition, we have specifically stated that "an unnamed party may have rights as an implied beneficiary of an insurance contract."[9] Thus, we have permitted an unnamed party to seek reformation of an insurance policy.[10] In this case, we conclude that Simmons's personal stake in the reformation of the insurance policy is therefore sufficient to confer standing.

### B. It was Error to Conclude that Regardless of Whether Walldow Were Named on the Policy, Simmons Is Not Entitled to Coverage.

The superior court determined that because the policy only covers family members of "individual" insureds, and because Happy Puppy Enterprises is a business rather than an individual, coverage would not extend to Simmons even if the contract were reformed to add Walldow as a named insured. Thus, the court did not address the question whether the contract should, in fact, be reformed to include Walldow as a named insured. Simmons argues that a UIM policy issued to "individual(s) d/b/a partnership or trade name" covers those individuals as well as the business entity. INA responds by stressing the policy's distinction between the individual and partnership forms of business.[11] INA argues that because the reformation sought by Simmons would identify the named insured as a partnership, not an individual, the condition precedent to the inclusion of any family member will not have been met.[12] INA therefore asserts that the superior court properly granted summary judgment without considering whether Simmons is entitled to reformation.

1. When a business owner acquires insurance in his or her trade name, coverage extends to the owner as well as to the business .

■ We first address the issue upon which the superior court based its decision: whether a policy issued to individuals or partners, d/b/a a partnership or trade name, covers the individuals as well as the business entity. Thus, the question is whether, assuming that the policy does name Walldow d/b/a Happy Puppy Enterprises as an insured, Walldow is an "individual" to whom family coverage extends.

■ We have stated that "a partnership is not a legal entity separate from its partners."[13] In the auto liability insurance context, various treatises have observed that

---

8. *Mathis v. Sauser*, 942 P.2d 1117, 1126 (Alaska 1997) (quoting *Kleven v. Yukon–Koyukuk Sch. Dist.*, 853 P.2d 518, 525 (Alaska 1993)).

9. *Stewart–Smith Haidinger, Inc. v. Avi Truck, Inc.*, 682 P.2d 1108, 1112 (Alaska 1984).

10. *See id.* at 1113–14.

11. On the declarations sheet of the policy, there are squares opposite "corporation," "partnership," "individual," and "other." In this particular policy the square opposite "individual" was checked. If the policy were to be reformed so that the named insured was Carol Mills and James Walldow d/b/a Happy Puppy Enterprises, and Mills and Walldow are a partnership, then the "partnership" box should be checked rather than the "individual" box.

12. The policy does not define the term "individual," but it defines an "insured" as "any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage." The policy goes on to state that "[e]xcept with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or 'suit' is brought."

13. *Williams v. Mammoth of Alaska, Inc.*, 890 P.2d 581, 584 (Alaska 1995).

where the policy names a partnership as the insured, coverage extends to the individuals comprising the partnership as well. For example, one treatise states:

> Where an automobile liability policy names a partnership as the insured and then lists the names of the individual partners in describing the named insured, the partners as individuals, as well as the partnership as an entity are covered.
>
> . . . .
>
> A policy purchased by an insured father in his trade name would be viewed as if issued in his given name, and references to the named insured in the policy would be deemed to refer to him individually.[14]

Another observes:

> When a motor vehicle insurance policy is issued to a partnership, the courts have usually concluded that it is appropriate to extend coverage to family members of the partners. Similarly, when insurance—acquired by the owner of a business—is issued in the trade name of the owner, coverage claims by that individual's relatives have usually been sustained.[15]

Other jurisdictions agree that when an insurance policy names individuals along with their trade names, coverage extends to those individuals as well as their businesses. For example, in *O'Hanlon v. Hartford Accident & Indemnity Co.*, the Third Circuit held that an insurance policy, which was issued in the insured's trade name and which agreed to cover the named insured's resident relatives, provided uninsured motorist coverage to the named insured's son.[16] In that case, O'Hanlon sought UIM coverage under the policy after his son suffered devastating injuries.[17] The policy agreed to cover "the Named Insured ... and, while residents of the same household, the ... relatives of [the Named Insured]."[18] The policy designated the named insured as "Coe Management Company," the trade name under which O'Hanlon conducted business.[19]

In determining whether the policy covered O'Hanlon's son's injuries, the Third Circuit stated that "an insured's trade name and given name should be equated," and that "where an insured purchases a policy in a trade name, the policy will be viewed as if issued in his given name."[20] The court also observed that "[o]nce it is established that the named insured is Patrick J. O'Hanlon, the policy is unambiguous and plainly affords uninsured coverage to [O'Hanlon's son]."[21]

And in *Watson v. Agway Insurance Co.*, a New Jersey court stated that "a trade name [is] nothing more than the alter ego of the individual."[22] Thus, a UIM policy that listed a partnership (and the individuals comprising it) as the "named insured" extended coverage to a partner's wife—a "family member" of the "named insured."[23]

In the *Watson* case the policy language was identical to the language at issue here. It defined an insured in part as

1. You.

14. 7 *Couch on Insurance* § 110:5, at 110–12, 110–13 (3d ed.1997) (citations omitted).

15. Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 4.4(C), at 83 (rev.2d ed.1999) (internal footnotes omitted). Still another treatise notes:

> A policy issued under the trade name of an individual is viewed as if issued under his given name. Thus coverage is extended to his resident relatives even though the accident was not business connected. Members of a partner's family who are resident relatives of a partner are treated as members of the named insured group on the ground that the partnership, for insurance purposes, is an "aggregate of persons" rather than a single legal entity.

2 Irvin E. Schermer, *Automobile Liability Insurance* § 40.02[2], at 40–13–40–14 (3d ed.1995) (citations omitted).

16. 639 F.2d 1019, 1020, 1026 (3d Cir.1981).

17. *See id.* at 1020.

18. *Id.* at 1026 (ellipses and brackets in original).

19. *See id.* at 1021.

20. *Id.* at 1025.

21. *Id.* at 1026.

22. 291 N.J.Super. 417, 677 A.2d 788, 792 (1996) (interpreting *O'Hanlon*).

23. *Id.* at 789, 790, 794.

2. If you are an individual, any "family member." [24]

The insurer argued, as INA does here, that partners could not be considered individuals under the policy.[25] The court disagreed and stated that a person does not "lose[ ] his identity as an individual because he is a partner in" a business.[26] "Reduced to its essence, the [insurer's] argument is untenable because it is contrary to the reasonable expectations of an average person who reads the policy and is conversant with the English language."[27]

Numerous other courts have agreed with this position as well, holding that policies that list a partnership or trade name as the "named insured" also extend coverage to the individuals comprising those businesses, and extending coverage to family members of the individual insureds.[28] This case law, the treatises, and our previous observation that "a partnership is not a legal entity separate from its partners,"[29] all support the conclusion that insurance policies which list trade or partnership names as the "insured" extend coverage to the individuals comprising

those businesses as well as to the businesses themselves.[30]

2. *We resolve any ambiguity in Simmons's favor by determining Walldow's reasonable expectations.*

▇▇▇▇▇ Assuming arguendo that the term "individual" is ambiguous, we resolve any ambiguity in Simmons's favor, because she is the purported insured.[31] A contract provision is "ambiguous" if "it is reasonably susceptible to more than one interpretation."[32] We have stated that courts must resolve ambiguity in insurance contracts "by determining the reasonable expectations of the contracting parties."[33] We discern the reasonable expectations "from the language of the disputed provisions, other provisions, and relevant extrinsic evidence, with guidance from case law interpreting similar provisions."[34]

The question is, assuming the policy had named Walldow d/b/a Happy Puppy Enterprises as an insured, whether Walldow could have reasonably expected the policy to cover him as an "individual," thereby affording coverage to his household family members.

24. *Id.* at 790.

25. *See id.* at 790–91.

26. *Id.* at 791.

27. *Id.*

28. *See, e.g., Ohio Cas. Ins. Co. v. Fike,* 304 So.2d 136 (Fla.Dist.App.1974) (policy listing partnership and individual partners as named insured and providing benefits for any relative of named insured would afford coverage to partner's daughter); *Patrevito v. Country Mut. Ins. Co.,* 118 Ill.App.3d 573, 74 Ill.Dec. 259, 455 N.E.2d 289 (1983) (driver was "named insured" within automobile policy provisions issued to his noncorporate business); *Hartford Accident & Indem. Co. v. Huddleston,* 514 S.W.2d 676 (Ky.1974) (contract for partnership liability insurance contemplates partnership as aggregate of persons rather than as legal entity and therefore extends coverage to partner's son under uninsured motorist provision, which applies to named insured and family members of same household); *American Bankers Ins. Co. of Fla. v. Stack,* 208 N.J.Super. 75, 504 A.2d 1219 (1984) (son is entitled to uninsured motorist benefits under policy issued to father's trade name); *Nationwide Mut. Ins. Co. v. United States Fidelity & Guar. Co.,* 529 F.Supp. 194 (E.D.Pa.1981) (policy listing as named insured the partnership of which the victim's father was a member extended coverage to the victim's fa-

ther and to his family); *McDonald v. Aetna Cas. & Sur. Co.,* 47 Wis.2d 235, 177 N.W.2d 101 (1970) (automobile insurance policy covers partners as individuals as well as partnership as an entity).

29. *Williams v. Mammoth of Alaska, Inc.,* 890 P.2d 581, 584 (Alaska 1995).

30. Simmons correctly notes that this situation differs from insurance policies that name a corporation as the insured. Unlike partnerships and common trade names, courts generally consider corporations to be separate legal entities apart from their owners. *See* Widiss, *Uninsured and Underinsured Motorist Insurance* § 4.4(B), at 67–82; 2 Schermer, *Automobile Liability Insurance* § 40.02[1], at 40–6–40–13.

31. *See Bering Strait Sch. Dist. v. RLI Ins. Co.,* 873 P.2d 1292, 1295 (Alaska 1994).

32. *D.D. v. Insurance Co. of N. Am.,* 905 P.2d 1365, 1368 (Alaska 1995).

33. *Zito v. Zito,* 969 P.2d 1144, 1147 n. 4 (Alaska 1998).

34. *Williams v. Crawford,* 982 P.2d 250, 253 (Alaska 1999).

Given the broad consensus that a private, noncorporate business is not separate from the individuals comprising it, and that a trade name is merely "the alter ego" [35] of the individual, we conclude that Walldow's expectation was reasonable.

The case law, other legal authority, and our analysis of reasonable expectations all support the conclusion that, where individual persons are listed as insureds under their trade names or partnerships, coverage extends to those individuals as well as to their businesses. Thus, it was error to conclude that Walldow would not have been covered as an individual even if the policy had listed him along with Carol Mills under their trade name Happy Puppy Enterprises, and it was error to grant summary judgment to INA on those grounds.

C. *The Superior Court Should Determine Whether the Contract Should Be Reformed to Include Walldow as an Insured.*

In the alternative, INA argues that summary judgment was proper because the contract cannot be reformed to include Walldow in any event. INA asserts that Happy Puppy Enterprises was Mills's sole proprietorship, and that there was no mutual mistake to justify reformation. Simmons responds that reformation is proper because the parties' clear intention was to include Walldow as a named insured on the policy, and because his name was omitted only due to the insurance agency's mistake. She contends that the superior court should have granted her summary judgment on those grounds.

Whether the evidence regarding the parties' intentions justifies reformation of a contract is ordinarily a question of fact for

the superior court.[36] In this case, however, the superior court did not reach this issue, so there are no findings for us to review on appeal.

We have stated that reformation of a contract is proper when "it is alleged that the instrument does not conform to the actual intentions of the parties." [37] Moreover, reformation "is justified when the parties have come to a complete mutual understanding of all the essential terms of their bargain, but by reason of mutual mistake the written agreement is not in conformity with such understanding." [38] Thus, in determining whether to reform a contract, the parties' intentions are dispositive.[39] The party wishing to reform the contract bears the burden of establishing through clear and convincing evidence that the omission was a mutual mistake.[40]

A leading treatise has stated that "[r]eformation will be granted where property owned jointly was, through the ... mutual mistake of the parties, insured in the name of one as sole owner." [41] Also, when an individual partner seeks insurance on behalf of the partnership, but by mistake the insurance contract lists only the individual partner, courts "will decree its reformation so as to make it cover the partnership interest, even after loss." [42]

Although Simmons submitted substantial evidence that Happy Puppy Enterprises was a joint business and that all the parties intended to insure both Mills and Walldow under the policy, INA also submitted evidence that Happy Puppy Enterprises was Mills's sole proprietorship. Thus, a genuine factual dispute remains as to whether Walldow and Mills jointly owned and operated Happy Puppy Enterprises and whether the

**35.** *Watson v. Agway Ins. Co.,* 291 N.J.Super. 417, 677 A.2d 788, 792 (1996).

**36.** *See Groff v. Kohler,* 922 P.2d 870, 874 (Alaska 1996).

**37.** *Ahwinona v. State,* 922 P.2d 884, 889 n. 3 (Alaska 1996) (quotations omitted).

**38.** *Id.* at 873 (emphasis and ellipsis omitted) (quoting *AMFAC Hotels v. State, Dep't of Transp.,*

659 P.2d 1189, 1192 (Alaska 1983), *overruled on other grounds by Atlantic Richfield Co. v. State,* 723 P.2d 1249, 1252 (Alaska 1986)).

**39.** *See id.*

**40.** *See id.*

**41.** *Couch on Insurance* § 27:31, at 27–39.

**42.** *Couch on Insurance* § 27:51, at 27–57–27–58.

parties intended to insure both Mills and Walldow under the trade name Happy Puppy Enterprises. We therefore conclude, based on the record before us, that neither INA nor Simmons is entitled to summary judgment on this issue, and we remand for a determination of whether the evidence supports reforming the policy to include James Walldow as a named insured.

■■■■ INA also asserts that even if the Stein Agency's Marlo Miller did make a mistake in failing to include Walldow's name on the policy, that mistake "is not a mistake attributable to INA." But the CIGNA companies (including INA) never terminated their agency relationship with the Stein Agency, which serviced the Happy Puppy Enterprises policy.

Simmons produced an agreement between INA and the Stein Agency in which INA appointed Stein to be its insurance agent, instructing Stein to "act as our agent," and to "solicit, accept and bind risks in accordance with the underwriting rules, regulations and directives we give you." Thus, because Stein acted as INA's agent, INA is responsible for any mistake made by the Stein Agency.[43]

> D. *The Superior Court Should Determine Whether Simmons Is Entitled to Coverage as a "Family Member" of James Walldow.*

■■■■ If the superior court reforms the Happy Puppy Enterprises policy to include Walldow as a named insured, the final issue is whether Simmons qualifies for coverage as his family member.

■■■■ The INA policy defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household, including a ward or foster child." We have declined to formulate a

fixed rule for determining whether a person is a "resident" of an insured's "household." [44] Rather, we have stated that "the facts of each case must be examined to determine whether the named insured ... and his relatives have ceased to be residents of the same household." [45] Moreover, we have noted that a child may be a resident of the household of one parent for coverage purposes even when the other parent has custody.[46]

In this case, the superior court did not address whether Simmons qualifies as a resident of Walldow's household. Because this is a factual issue, we remand for a determination of whether Simmons is a "family member" of Walldow's "household" for purposes of the INA UIM policy.

## V. *CONCLUSION*

Because it was error to conclude that a person who is insured under his trade name is not an "individual" insured, we REVERSE the grant of summary judgment. Moreover, because genuine factual issues remain as to whether Happy Puppy Enterprises was a partnership and whether the parties intended to insure both Mills and Walldow under the policy, we REMAND to the superior court. On remand, the court should determine whether the UIM policy should be reformed to include Walldow as a named insured and whether the UIM policy covers Simmons as a resident of Walldow's household.

---

**43.** *See Coulson v. Marsh & McLennan, Inc.*, 973 P.2d 1142, 1147 n. 9 (Alaska 1999) ("A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.") (quoting Restatement (Second) of Agency § 219(1) (1958)); *Winn v. Mannhalter*, 708 P.2d 444, 451 (Alaska 1985) ("A broker is liable for the actions of his agents under the doctrine of respondeat superior."); *City of Delta Junction v. Mack Trucks, Inc.*, 670 P.2d 1128, 1129 (Alaska 1983) (principal is liable for acts of agent or apparent agent, including liability for breach of warranty).

**44.** *See Wainscott v. Ossenkop*, 633 P.2d 237, 240 (Alaska 1981).

**45.** *Id.* at 240.

**46.** *See id.* at 244 n. 16.