This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.
**No. 34,938**

**WILLIAM DANIEL HICKEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**John A. Dean Jr., District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Elizabeth Ashton, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**GARCIA, Judge.**

{1}     Defendant William Daniel Hickey appeals from his jury convictions of battery on a peace officer; resisting, evading, or obstructing an officer; and disorderly conduct. On appeal, Defendant raises five arguments. As discussed more fully in this opinion, we conclude that (1) Defendant's multiple punishments for resisting, evading, or obstructing an officer, and battery on a peace officer violate his double jeopardy protections; (2) the evidence was factually and legally sufficient to support the conviction for battery on a peace officer; (3) the jury needed no further instructions regarding the definition of meaningful challenge to authority; (4) substantial evidence supports Defendant's conviction for disorderly conduct; and (5) Defendant has not asserted a prima facie case of ineffective assistance of counsel. We therefore conclude that Defendant's conviction for resisting, evading, or obstructing an officer should be vacated, and his convictions for battery on a peace officer and disorderly conduct should remain. Accordingly, we remand to the district court to vacate the resisting, evading, or obstructing conviction, and to re-sentence Defendant accordingly. Defendant's other convictions are affirmed.

**BACKGROUND**

{2}     The evidence presented at trial included the audio and video recordings taken by witnesses. Devin Shaheen testified at trial that she was sitting in her living room near the intersection of Chaco and Zuni in Farmington, New Mexico, when she heard

2

a lot of "hootin' and hollerin' . . . outside." Initially, she believed the hollering arose from children in the street, but became concerned because it eventually sounded like it was on her front porch. Shaheen looked out her window and saw Defendant pushing a female, later identified as Defendant's girlfriend (Girlfriend), in Shaheen's front yard, noted that they were screaming at each other, and acting aggressively and hateful toward one another. Shaheen continued to watch as Defendant started to leave and walk around Shaheen's fiance's car, when Girlfriend picked up a rock while facing the car. At that point, Shaheen called the police and went outside to continue watching Defendant go around the car and cross the street.

{3}     Shaheen further testified that, throughout the interaction, it seemed like Defendant and Girlfriend were getting more and more angry with each other. During the fifteen or so minutes that it took police to arrive, Shaheen testified that the couple was moving down across the street, then came back up and turned left onto Zuni, all the while continuing to be loud and cursing excessively. Shaheen also testified that she saw one other neighbor come running out from down the road and follow the fighting couple. At one point, Defendant began yelling at Shaheen because she had called the cops.

{4}     Officer Jon Lillywhite of the Farmington Police Department also testified. Officer Lillywhite testified that he came into contact with Defendant near the

3

intersection of Chaco and Zuni by responding to a call from dispatch for an argument between a male and a female. Once he arrived on scene he saw several people near the intersection, pointing west and signaling toward the location where the incident was taking place. Officer Lillywhite testified that Defendant was on the street and seemed to be acting aggressively, so he exited his police vehicle. Officer Lillywhite clarified that by "acting aggressively," he meant Defendant's body language "seemed to be posturing, his shoulders up," and not wanting to be followed by the crowd of people that had gathered nearby. Officer Lillywhite also observed another male standing in the vicinity, who made eye contact with him and gestured as if, "that's the guy right over there." Officer Lillywhite also saw other people off to the side, pointing to Defendant.

{5}     Officer Lillywhite testified that the first thing he said to Defendant was to have a seat on the curb for a moment. Defendant yelled back loudly and in a rude manner, "F[__] you, I'm not f[__]ing sitting anywhere[,] I don't live here[.]" Officer Lillywhite said he again asked Defendant to have a seat and informed him that he was being detained. Defendant did not comply but said "I can go wherever I want" and began walking away. Officer Lillywhite continued with his commands for Defendant to have a seat on curb and informed Defendant that he was being detained while Office Lillywhite investigated the situation further. Officer Lillywhite then testified

4

that, as they continued to interact, Defendant began to aggressively close the distance between himself and the officer, so the officer took a couple steps back. Officer Lillywhite called for additional backup units to arrive on scene, and once he heard other units pulling up, he knew it was safer to go "hands-on" with Defendant due to his refusal to obey his commands to sit on the curb. Officer Lillywhite then took hold of Defendant's wrists—grabbing Defendant's right hand near the wrist and his left arm just above his elbow, while another officer did the same with Defendant's left hand—all while Defendant continued pulling away from the officers and refusing to comply. Officer Lillywhite testified that he used this "hands-on" technique for several reasons: (1) as Defendant was approaching him, he was "posturing up into a fighting stance"; (2) Defendant continually attempted to leave the scene; (3) Defendant did not want to cooperate with the police investigation; and (4) the use of other equipment such as pepper spray is typically not as safe for the people whom the officers are attempting to detain.

{6}     Officer Lillywhite testified that, once the officers made physical contact with Defendant, he continued to resist by flexing his biceps, tucking his arms in tight so handcuffs could not easily be applied, and by pulling away and trying to walk away. Officer Lillywhite also testified that Defendant used the heel of his left foot to pull back and kick Officer Lillywhite on the inside of his right thigh. Officer Lillywhite

further testified that the officers continued giving Defendant commands to comply and to get on the ground, which he refused, and eventually the officers put Defendant on the ground and put him into handcuffs.

{7}   The State also played a video recording of the incident, which Officer Lillywhite testified was a fair and accurate representation of the incident. While the video was playing, Officer Lillywhite testified about specific circumstances taking place that might not be readily apparent to the jury. The State rested its case, and Defendant called no witnesses and also rested his case. The jury entered verdicts finding Defendant guilty of battery on a peace officer; resisting, evading, or obstructing an officer; and disorderly conduct. The judgment, sentence, and commitment was entered, and Defendant filed an appeal.

**DISCUSSION**

**I.    Double Jeopardy**

{8}   We first address Defendant's argument that his multiple punishments for resisting, evading, or obstructing an officer, and battery on a peace officer violated his double jeopardy protections. The State concedes the argument, agreeing that Defendant's double jeopardy rights were violated and that the resisting, evading, and obstructing conviction should be vacated. We agree with Defendant and the State. We conclude that the analyses in their briefs are in accordance with New Mexico law. *See*

6

*State v. Ford*, 2007-NMCA-052, ¶¶ 4-23, 141 N.M. 512, 157 P.3d 77 (analyzing battery on a peace officer and resisting an officer convictions with similar facts and concluding that the defendant's double jeopardy rights were violated). Thus, we reverse Defendant's conviction for resisting, evading, and obstructing an officer and remand to the district court with instructions to vacate the conviction and resentence Defendant accordingly.

**II.     Sufficiency of the Evidence for Battery on a Peace Officer**

{9}     Defendant argues that "[t]he evidence was factually and legally insufficient to support the conviction for battery on a peace officer." Defendant's argument is broken into two parts: (1) that when conduct neither harms nor endangers an officer, the conduct must actually interfere with the officer's ability to carry out his/her duties in order to constitute a meaningful challenge to authority; and (2) that even under the current approach, there was insufficient evidence to establish that Officer Lillywhite's authority was challenged in any meaningful way.

{10}     Defendant contends that the appropriate standard of review is de novo because our review should also involve statutory interpretation regarding the meaning of the phrase "meaningful challenge to authority." The State disagrees and contends that the appropriate standard of review is whether substantial evidence existed to support the verdict. We agree with the State regarding the proper standard of review for

addressing a sufficiency of the evidence claim. We shall address any interpretation of the requisite statute or jury instruction separately.

{11} "[A]ppellate courts review sufficiency of the evidence from a highly deferential standpoint." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (omission, internal quotation marks, and citation omitted). "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *Id.* (alterations, internal quotation marks, and citation omitted). "We examine each essential element of the crimes charged and the evidence at trial to ensure that a rational jury could have found the facts required for each element of the conviction beyond a reasonable doubt." *Id.* (internal quotation marks and citation omitted). "[A]ppellate courts do not search for inferences supporting a contrary verdict or re-weigh the evidence because this type of analysis would substitute an appellate court's judgment for that of the jury." *Id.* (internal quotation marks and citation omitted).

{12} The jury instructions for battery on a peace officer required the jury to find beyond a reasonable doubt that Defendant's conduct caused an actual threat to the safety of Officer Lillywhite or a meaningful challenge to his authority. *See State v. Radosevich*, 2016-NMCA-060, ¶ 29, 376 P.3d 871 (stating that unchallenged jury instructions become the governing law of the case), *cert. granted*, 2016-NMCERT-

___, (No. 33,282, July 1, 2016); *see also State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (alterations, internal quotation marks, and citation omitted)).

{13}     Defendant argues that, even without a more specific definition for what constitutes a meaningful challenge to authority, the evidence remains insufficient to establish this element of the crime. Specifically, Defendant contends that, even though the jury could reasonably find that Defendant kicked Officer Lillywhite, no evidence indicates that Officer Lillywhite was unable to perform his duties as a result of the kick and/or that such facts "establish that [Defendant]'s conduct had any aggravated impact" that would satisfy the requirements of battery on a peace officer, as opposed to simple battery.

{14}     In *State v. Martinez*, we addressed a set of facts similar to those in the present case. 2002-NMCA-036, 131 N.M. 746, 42 P.3d 851. In *Martinez*, the defendant was involved in a scuffle with guards at a prison while one guard was taking the defendant to his cell. *Id.* ¶ 3. "[The d]efendant was handcuffed and his legs were shackled, with a 'black box' securing chains between the cuffs and the leg shackles." *Id.* "The [guard] either grabbed or placed his hand on [the d]efendant's arm as he was leading [the d]efendant into the cell [and the d]efendant jerked away." *Id.* "When the [guard]

9

touched [the d]efendant's arm a second time, [the d]efendant jerked away again." *Id.* "The [guard] then pushed [the d]efendant to the ground[, at which] point [the d]efendant spit toward the [guard's] face[,] some of [which] landed in the [guard's] mouth." *Id.* "Three other [guards] came to assist and restrained [the d]efendant by placing him face down on the ground." *Id.* "While the [guards] were on top of him, [the d]efendant continued to struggle, kicking his legs up and down [and, a]s he did so, . . . kicked [one guard] in the leg." *Id.*

{15}    The defendant in *Martinez* also argued that there was insufficient evidence to convict him of battery on a peace officer because it did not rise to the level of conduct necessary for such a conviction since nothing he did constituted a meaningful challenge to the officer's authority. *See id.* ¶¶ 36, 39. We differentiated between actions that constitute a threat to officer safety versus those that constitute a meaningful challenge to authority, reiterated that it is up to the jury to determine if the facts constitute a meaningful challenge to authority, held that "[a]ll of [the d]efendant's actions constituted a challenge to the officer's authority[,]" and determined that there was sufficient evidence for the jury to decide as much. *Id.* ¶¶ 38-40; *see State v. Jones*, 2000-NMCA-047, ¶ 15, 129 N.M. 165, 3 P.3d 142 (stating that "a rational, properly instructed jury could find beyond a reasonable doubt that [the defendant's] spitting upon an officer from the rear seat of the officer's car constituted

10

a 'meaningful challenge' to the authority [that] the officer was lawfully exercising over him pursuant to his arrest").

{16} In the present case, despite Defendant's argument that Officer Lillywhite was able to perform his duties notwithstanding the kick to his thigh, the evidence was sufficient to establish that Defendant meaningfully challenged the authority of Officer Lillywhite. Defendant continued to resist, pull away, and walk away from Officer Lillywhite and the other officer in response to their commands and attempts to secure Defendant by his arms and wrists; Defendant kicked Officer Lillywhite in the leg with the heel of his foot as the officers attempted to restrain him; and Defendant continued to refuse compliance with the officers' continuing commands until he was taken to the ground and handcuffed. All of these actions constitute a challenge to Officer Lillywhite's authority while he was attempting to perform his statutory duties. *See Martinez*, 2002-NMCA-036, ¶ 40. Viewing the evidence in the light most favorable to the State, we hold that there was sufficient evidence to support the jury's verdict that Defendant's actions constituted a meaningful challenge to Officer Lillywhite's authority, and Defendant committed battery on a peace officer when he kicked Officer Lillywhite in the thigh.

**III. Jury Instructions Regarding Battery on a Peace Officer**

{17} Defendant next argues that the jury needed further clarity with respect to the

definition of a meaningful challenge to authority—in other words, that some definitional instruction should have been given, *sua sponte*, and its absence resulted in fundamental error. "The standard of review we apply to jury instructions depends on whether the issue has been preserved. If the error has been preserved we review the instructions for reversible error. If not, we review for fundamental error." *State v. Benally*, 2001-NMSC-033, ¶ 12, 131 N.M. 258, 34 P.3d 1134 (citation omitted). "Under both standards we seek to determine whether a reasonable juror would have been confused or misdirected by the jury instruction." *Id.* (internal quotation marks and citations omitted).

{18}    In the present case, the jury was instructed that, to convict Defendant of battery on a peace officer, it must find beyond a reasonable doubt that:

1.    [D]efendant intentionally touched or applied force to [Officer] Lillywhite by kicking him in his thigh;

2.    At the time, [Officer] Lilly[]white was a peace officer and was performing the duties of a peace officer;

3.    [D]efendant knew [Officer] Lillywhite was a peace officer;

4.    [D]efendant's conduct caused an actual threat to the safety of [Officer] Lillywhite or a meaningful challenge to the authority of [Officer] Lillywhite;

5.    [D]efendant acted in a rude, insolent, or angry manner; [and]

6.    This happened in New Mexico on or about the 22nd day of October, 2014.

12

These jury instructions match the uniform jury instructions and do not omit any element therein. *See* UJI 14-2211 NMRA.

{19} Defendant nevertheless argues that the absence of any explanatory or definitional instruction regarding "meaningful challenge to [the] authority" of Officer Lillywhite was akin to a missing element in the instructions. However, there is no such definition because "[this Court has] specifically declined to define what types of behavior will be sufficient to constitute a meaningful challenge to authority and what will not" and "we [have] stressed that whether or not a defendant's conduct constituted a meaningful challenge would depend on the context in which the battery occurred." *Martinez*, 2002-NMCA-036, ¶ 38. "Because its definition demands knowledge of the context in which the battery arose, this question is best left to juries to decide using their collective common sense and wisdom as a guide." *Jones*, 2000-NMCA-047, ¶ 14; *see Martinez*, 2002-NMCA-036, ¶ 38 (specifically declining to "define what types of behavior will be sufficient to constitute a meaningful challenge to authority" because "whether or not a defendant's conduct constituted a meaningful challenge would depend on the context in which the battery occurred"). "The term 'meaningful' provides a means to prevent treating petty conduct that could be interpreted as an incidental challenge to authority as though it were a strict liability felony." *Jones*, 2000-NMCA-047, ¶ 14.

**{20}** Applying our reasoning in both *Jones* and *Martinez*, we shall not attempt to define what constitutes a "meaningful challenge to authority." *See State v. Barber*, 2004-NMSC-019, ¶ 20, 135 N.M. 621, 92 P.3d 633 (indicating that the failure to instruct the jury on a definition, even if it had been called for in an official UJI Use Note, does not typically rise to the level of fundamental error and citing cases in support thereof). As a result, we conclude that no error could have occurred when the district court failed to add a definition for "meaningful challenge to authority" to the jury instructions in this case.

## IV. Sufficiency of the Evidence for Disorderly Conduct

**{21}** Defendant argues that "substantial evidence" does not support Defendant's conviction for disorderly conduct because his conduct was not conduct likely to incite a breach of the peace. Notwithstanding Defendant's argument that we should also review this argument de novo, we agree with the State that the appropriate standard of review is based upon a sufficiency of the evidence, and "appellate courts review sufficiency of the evidence from a highly deferential standpoint." *Slade*, 2014-NMCA-088, ¶ 13 (omission, internal quotation marks, and citation omitted). "All evidence is viewed in the light most favorable to the state, and we resolve all conflicts and make all permissible inferences in favor of the jury's verdict." *Id.* (alterations, internal quotation marks, and citation omitted).

{22}    The jury was instructed that, to find Defendant guilty of disorderly conduct, it was required to find beyond a reasonable doubt that:

1.    [D]efendant engaged in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace; [and]

2.    This happened in New Mexico on or about the 22nd day of October, 2014.

*See* NMSA 1978, § 30-20-1 (1967) (defining in pertinent part, disorderly conduct in the same manner). Defendant argues that such conduct must extend beyond yelling profanities to conduct "that was likely to incite others to an immediate breach of the peace." Defendant does not argue that his conduct could not "reasonably be labeled as violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct"; rather, he argues that such conduct did not tend to disturb the peace.

{23}    In *State v. James M.*, we explained that "the statute limits the proscribed conduct by including only conduct which tends to disturb the peace." 1990-NMCA-135, ¶ 21, 111 N.M. 473, 806 P.2d 1063. Our Supreme Court clarified in *State v. Correa* that there are "two elements: the conduct itself and the tendency of the conduct to disturb the peace[, and b]oth must be present." 2009-NMSC-051, ¶ 21, 147 N.M. 291, 222 P.3d 1 (internal quotation marks and citation omitted). Our Supreme Court further explained:

> Our Legislature has not defined what it means to 'disturb the peace.' Our courts have stated that the standard is whether [the] defendant's conduct tends to disturb the public peace. Conduct which tends to disturb the peace is that conduct which is inconsistent with the peaceable and orderly conduct of society. We have defined disturbing the peace as a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community. We have construed the statute narrowly and, unless the acts complained of fall clearly within the statute, they are not disorderly.

*Id.* ¶ 22 (alteration, emphasis, internal quotation marks, and citations omitted). Our Supreme Court has identified three categories of conduct that tends to disturb the peace: "(1) an actual act of violence; (2) an act likely to incite another to violence; and (3) an act that disturbs the peace and tranquility of the community." *Id.* ¶ 31 (citation omitted); *see State v. Florstedt*, 1966-NMSC-208, ¶¶ 7,10, 77 N.M. 47, 419 P.2d 248 (stating that acts of violence, acts likely to incite violence, and acts that, "by causing consternation and alarm, disturb the peace and quiet of the community[,]" tend to disturb the peace (internal quotation marks and citation omitted)).

{24} Defendant argues that his conduct does not fall within the statute. We disagree. Even just looking at Defendant's actions prior to his police interactions, we conclude that Defendant's acts of screaming and yelling at Girlfriend in public; walking up and down a residential neighborhood while yelling, fighting and cursing excessively; causing residents of the neighborhood to run after and follow the fighting couple; and yelling at and acting aggressively towards those residents for following him and for

16

calling the police constitute conduct that tends to disturb the peace—i.e., that such conduct is inconsistent with the peaceable and orderly conduct of society and/or causes consternation and alarm, thereby disturbing the peace and quiet of the community. *See Correa*, 2009-NMSC-051, ¶¶ 22, 31; *Florstedt*, 1966-NMSC-208, ¶¶ 7, 10. *Correa* also indicated that the "time, place, and manner" of a defendant's conduct would have been relevant to an analysis of whether the conduct tended to disturb the peace, had such an argument been raised. 2009-NMSC-051, ¶ 31. We therefore conclude that, viewing the evidence in the light most favorable to the State and resolving all conflicts and making all permissible inferences in favor of the jury's verdict, there was sufficient evidence to support the jury's verdict that Defendant committed disorderly conduct.

## V.      Ineffective Assistance of Counsel

{25}      Finally, Defendant argues that his trial counsel was ineffective.

> To establish a prima facie case of ineffective assistance of counsel, [the d]efendant must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness; and (2) that [the d]efendant suffered prejudice in that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

*State v. Aker*, 2005-NMCA-063, ¶ 34, 137 N.M. 561, 113 P.3d 384 (internal quotation marks and citation omitted). Defendant contends that his trial counsel should have called witnesses that he wanted at trial and, had he called these witnesses, "such as

[Defendant]'s girlfriend, the result would have been different." However, beyond referencing Girlfriend in passing as an example, Defendant fails to identify which witnesses he would have wanted his trial counsel to call, explain what testimony and/or evidence those witnesses would have offered that may have changed the result of the proceeding, or explain what prejudice he suffered as a result of his trial counsel's failure to call such witnesses. As such, we conclude that Defendant has failed to show that his trial counsel's performance fell below an objective standard of reasonableness or that he suffered prejudice. *See id.*; *see also State v. Stone*, 2008-NMCA-062, ¶ 28, 144 N.M. 78, 183 P.3d 963 (indicating that "prejudice must be shown before a defendant is entitled to relief based on ineffective assistance of counsel"). We therefore hold that Defendant has failed to establish a prima facie case of ineffective assistance of counsel. *See Aker*, 2005-NMCA-063, ¶ 34.

{26}     Nonetheless, we note that, to the extent Defendant believes other facts, such as those not contained in the record, are pertinent to his assertion of ineffective assistance of counsel, habeas corpus proceedings may be the preferred avenue for Defendant to pursue such claim. *See State v. Roybal*, 2002-NMSC-027, ¶ 19, 132 N.M. 657, 54 P.3d 61 ("When an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record. If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought

18

through a habeas corpus petition[.]"). Indeed, it is well established that "[h]abeas corpus proceedings are the preferred avenue for adjudicating ineffective assistance of counsel claims, because the record before the trial court may not adequately document the sort of evidence essential to a determination of trial counsel's effectiveness." *State v. Grogan*, 2007-NMSC-039, ¶ 9, 142 N.M. 107, 163 P.3d 494 (internal quotation marks and citation omitted).

**CONCLUSION**

{27}    For the foregoing reasons, we affirm Defendant's convictions for battery on a peace officer and disorderly conduct, and reverse Defendant's conviction for resisting, evading, or obstructing, and remand with instructions to vacate the reversed conviction and resentence Defendant accordingly.

{28}    **IT IS SO ORDERED.**

_____

**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____

**MICHAEL E. VIGIL, Judge**

_____

**JULIE J. VARGAS, Judge**